[No. 12249-2-III.   Division Three.   November 30, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD A. SJOGREN, *Petitioner.*

*Hugh M. Spall,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Susan C. Arb, Deputy,* for respondent.

SWEENEY, J. — The Superior Court affirmed Richard Sjogren's district court conviction of driving while intoxicated. On discretionary review, Mr. Sjogren contends (1) his extrajudicial statements that he was driving while intoxicated should not have been considered because there was insuffi-

cient independent corroborating evidence of the corpus de-
licti, and (2) without the statements, there is insufficient
evidence to support the conviction. We affirm.

## PROCEDURE

Mr. Sjogren was charged with driving while intoxicated as
the result of a single-vehicle accident. He was found guilty
following a bench trial. He then appealed to the Superior
Court, contending there, as here, that his inculpatory state-
ments should not have been admitted and the remaining
evidence did not support the conviction. Because the tapes of
the trial had been lost, the Superior Court remanded to the
District Court for a new trial.[1] The new trial was held on
June 20, 1991, before the same judge, who again found Mr.
Sjogren guilty. Mr. Sjogren again appealed; the Superior
Court affirmed the conviction. We granted discretionary
review.

## FACTS

On the evening of June 24, 1990, Mr. Sjogren was drinking
at Rambler's Park Tavern in Yakima. He walked across the
street to a friend's house and asked him if he wanted to go to
Gleed; Phil Reed said yes. The men took Mr. Sjogren's pickup
and ended up at Curley's Tavern in Gleed, drinking beer.
Shortly after they left the tavern, the pickup was driven off
the road and into a ditch.

When Washington State Trooper Brian Messer arrived at
the scene, the pickup had been pulled partially from the
ditch with the assistance of passersby. Trooper Messer testi-
fied that as he approached, Mr. Sjogren walked up to him.
The trooper asked if he knew what had happened; Mr. Sjo-
gren responded that he was the driver. The trooper deter-
mined the pickup was registered to Mr. Sjogren. He testified
that after he read Mr. Sjogren his *Miranda* warnings, Mr.
Sjogren said: "I'm not gonna bullshit you officer I've got a
hell of a buzz going and I was the driver." He then placed

---

[1]Mr. Sjogren has not raised the issue of double jeopardy.

Mr. Sjogren in the back of his patrol car and "contacted the passenger, Mr. Reed, who was passed out in the vehicle"; he was unable to get a statement from Mr. Reed.

Mr. Reed testified he and Mr. Sjogren drank a couple of beers at Curley's, then left. He took the pickup keys from Mr. Sjogren just as they were leaving the bar and he was driving when somebody pulled out in front of them, causing him to hit the brakes and end up in the ditch. Mr. Reed testified he hit his head on the doorframe and was knocked out. He was lying, however, in the back of the crew cab and came to as the pickup was being pulled from the ditch.

Rosalie Roller was tending bar at Curley's. She testified Mr. Sjogren was "cut off" and, after she asked who was driving, she saw Mr. Reed take keys from Mr. Sjogren before they left.

Mr. Sjogren testified Mr. Reed took his keys just before they left Curley's. To the best of his recollection, he got in on the passenger side and Mr. Reed got into the driver's seat. Mr. Sjogren further testified he did not learn until the following day that Mr. Reed had been driving. But that made sense to him because he remembered seeing Mr. Reed jammed on the left side of the steering wheel near the doorframe and finding himself between the bucket seats. Mr. Sjogren testified two pickups pulled his truck from the ditch before the trooper arrived. He and the drivers of the two pickups had something to drink; and "Phil was still in the back seat of the pick-up . . . I don't know how long he was out but he was not very coherent at the time . . . we just had him lay there." He remembered Trooper Messer arriving at the scene, but nothing that followed. He had been drinking since midafternoon and was "hammered".

## DECISION

The dispositive issue is whether the State produced sufficient independent corroborating evidence that Mr. Sjogren was driving the pickup to prove the corpus delicti of the offense of driving while intoxicated. We conclude it did.

■ The corpus delicti of most crimes requires proof only that a crime was committed by someone. It does not include the identity of the person who committed the crime. *Bremerton v. Corbett*, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986). The offense of driving while intoxicated is different, in that the corpus delicti cannot be established absent proof connecting a specific intoxicated person with operation or control of a vehicle. *Bremerton*, at 574; *State v. Hamrick*, 19 Wn. App. 417, 419, 576 P.2d 912 (1978).

■ The confession[2] of a person charged with a crime is not sufficient to establish the corpus delicti. For a confession to be considered at trial, there must be an independent prima facie showing of the corpus delicti. *Bremerton*, at 574-75. The independent evidence need not be sufficient to support a conviction or to send the case to a jury, nor must it exclude every reasonable hypothesis consistent with the defendant not driving the vehicle. *Bremerton*, at 578. In this context, "prima facie" means only evidence of sufficient circumstances which would support a logical and reasonable inference that the defendant was driving or in actual physical control of the vehicle. *Bremerton*, at 578-79.

The evidence in this case gives rise to a logical and reasonable inference that Mr. Sjogren was the driver of his pickup. He was present at the scene of the accident in close proximity to the pickup; the pickup was registered to him; and the only other person who could have been driving was passed out in the crew cab of the pickup, behind the front seats. *See Bremerton*, at 579 (There, petitioner Carr was standing near

---

[2]As in *Bremerton*, at 575 n.1, it is not necessary to distinguish between an admission or a confession. The court there refers to *State v. Karumai*, 101 Utah 592, 601, 126 P.2d 1047, 1052 (1942) for an explanation of the difference. *Karumai*, at 601, explains:

A confession is the admission of guilt by the defendant of all the necessary elements of the crime of which he is charged, including the necessary acts and intent. An admission merely admits some fact which connects or tends to connect the defendant with the offense but not with all the elements of the crime.

By this definition, Mr. Sjogren's first statement was an admission and his second was a confession.

the vehicle registered to her when police arrived. Another person was in the passenger seat of Carr's vehicle, but was unable to start the car when asked to do so, although the police officer had no difficulty starting the car. Held: this evidence will support a reasonable inference Ms. Carr was the driver.).

We affirm.

THOMPSON, C.J., and COOPER, J. Pro Tem., concur.