[No. 30480-1-I.   Division One.   February 6, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. DARRICK DONTE WRIGHT, *Appellant*.

---

[9]White was sentenced in 1992 under the 1990 version of RCW 9.94A.120.

*Douglas Ende* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Paul Casey, Deputy*, for respondent.

AGID, J. — Darrick Donte Wright appeals his conviction for possession of a firearm, arguing that (1) the trial court erred in admitting his postarrest statement, (2) prosecutorial misconduct deprived him of a fair trial and (3) he was denied effective assistance of counsel. He also challenges his standard range sentence on the ground that the trial court should have exercised its discretion to score his prior offenses as one in calculating his offender score. We affirm his conviction. We agree, however, that the trial court was required, but failed, to exercise discretion in determining whether Wright's prior convictions should be counted as a single offense for sentencing purposes. We therefore remand the case to the trial court with instructions to exercise discretion in calculating Wright's offender score.

## FACTS

Around midnight on November 14, 1991, Officer Timothy Fountain heard a gunshot about a block away from the area in Seattle he was patrolling. He broadcast this information over the radio and asked for backup. Fountain drove westbound on Cherry Street and saw Wright and Robert Smith standing on the corner of 25th and Cherry. He approached them and asked whether they had heard a gunshot. Wright responded that the shot had come from a white Reliant K car which had driven southbound on 25th Street. Fountain drove in that direction and spotted a white Reliant K car parked in a driveway. He concluded, however, that it had not been driven recently because it was covered with a uniform coat of condensation. Fountain suspected that Wright and

Smith had given him false information and returned to speak with them further.

Fountain located Wright and Smith on the south side of Cherry and 25th where they were standing facing a row of bushes. Fountain could not see what they were doing. When Wright and Smith saw Fountain's patrol car approach, they began to walk quickly away from the area. Fountain stopped them about 25 feet from the bushes. Officer John Fox, one of the officers who responded to Fountain's request for backup, found a loaded pistol lying on top of some leaves near the sidewalk in the area where Wright and Smith had just been standing. Fox testified that it had rained earlier in the evening, but the side of the pistol that had been on the ground was wet while the side facing upward was fairly dry. From this information, he deduced that the pistol had only been on the ground for a short period of time.

Wright and Smith were arrested and placed in separate patrol cars.[1] Wright was placed in a patrol car with officers Gary Jackson and John Knight and given his *Miranda*[2] warnings, which he waived. Wright told Knight that he wanted to speak to him alone, and Jackson got out of the car. When they were alone, Wright said that the pistol was his and that it had discharged accidentally. The officers took Wright to the police station where he again received *Miranda* warnings. He again waived them and gave a written statement admitting to possession of the gun. The State was unable to lift any identifiable fingerprints from the gun. At trial, Wright acknowledged making these statements to Knight, but testified that he had lied to Knight because the officer had promised him he would receive only a citation and would be allowed to leave if he admitted possessing the pistol. He also testified that it was actually Smith who had the pistol prior to their arrest.

Wright was charged with a violation of the Uniform Firearms Act (VUFA) for possessing a pistol while having been convicted of a felony violation of the Uniform Controlled

---

[1]The officers patted down both men but recovered no evidence.

[2]Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Substances Act (VUCSA), contrary to RCW 9.41.040(4). He moved to exclude his statements to Knight and to dismiss the charge on the ground that the State could not establish the corpus delicti of the crime. Wright's motion was denied, and he was found guilty as charged at trial. At his sentencing hearing, Wright argued that the court should consider the prior offenses for which he had received concurrent sentences as one offense in calculating his offender score. The court ruled that it did not have discretion to do so and counted each of his prior offenses separately.

## Corpus Delicti

◼ Wright contends that his statement to Knight should have been suppressed under the corpus delicti rule. A defendant's extrajudicial confession or admission is inadmissible unless there is independent prima facie proof of the corpus delicti of the crime. *State v. Cobelli*, 56 Wn. App. 921, 924, 788 P.2d 1081 (1989). Corpus delicti generally involves only two elements: (1) an injury or loss and (2) a person's criminal act as a cause thereof. *State v. Smith*, 115 Wn.2d 775, 781, 801 P.2d 975 (1990). However, in some instances, identification of a particular individual is required to establish the corpus delicti of a crime. *Bremerton v. Corbett*, 106 Wn.2d 569, 574, 723 P.2d 1135 (1986); *State v. Hamrick*, 19 Wn. App. 417, 419, 576 P.2d 912 (1978). Wright argues that, as a threshold matter, to establish the corpus delicti of the crime with which he was charged, the State must show not only that a crime occurred, but also the identity of the person who committed it.

In *Hamrick*, 19 Wn. App. 417, we held that, in some instances, the corpus delicti rule requires identification of a particular person as the perpetrator of the charged crime. Hamrick was charged with driving while intoxicated after being involved in a 2-car accident. After the accident, he made statements to the police admitting that he had been driving one of the vehicles in the accident. 19 Wn. App. at 418. The trial court dismissed the charge. We held that his case had been properly dismissed on corpus delicti grounds because there was no evidence, other than Hamrick's state-

ment, establishing that he was driving or was in actual physical control of a vehicle.[3] We reasoned that although "the corpus delicti of most crimes does not involve the issue of identity, the corpus delicti for the offense of driving while under the influence of intoxicating liquor . . . requires evidence that defendant operated or was in actual physical control of a vehicle while he was under the influence of intoxicating liquor." 19 Wn. App. at 419.

In *Corbett*, 106 Wn.2d 569, the Supreme Court agreed with the *Hamrick* ruling, holding that the requirement that the intoxicated person be the driver or in control of the car is inherent in the offense of driving while intoxicated. The corpus delicti of the crime cannot be proved without proving someone's criminal agency. Proving criminal agency, in turn, requires identification of a particular individual who is under the influence. Thus, the court concluded that "the corpus delicti of the offense[ ] . . . cannot be established absent proof connecting [a defendant] with operation or control of a vehicle while intoxicated." 106 Wn.2d at 574. *See also State v. Sjogren*, 71 Wn. App. 779, 862 P.2d 612 (1993).

██ No case addresses the issue of whether identification of a particular individual is required to establish the corpus delicti of the crime of possession of a short firearm or pistol while having been convicted of a felony VUCSA. Under the reasoning of *Hamrick* and *Corbett*, we conclude that identification of a particular person is necessary to establish the corpus delicti of this crime. Like the crime of driving while under the influence with which Hamrick and Corbett were charged, the crime charged here is one that inherently requires the proof of identity. RCW 9.41.040(4) criminalizes the possession of a short firearm or pistol by a person who has previously been convicted of a felony VUCSA. At trial, Wright stipulated to his prior felony VUCSA's. In order to establish the corpus delicti of the crime, the State must show (1) possession of a short firearm or pistol and (2) that the person possessing it was previously convicted of a felony VUCSA. The second ele-

---

[3]The investigating officer testified that he was unable to ascertain whether Hamrick owned either of the vehicles. 19 Wn. App. at 418.

ment of the crime cannot be proved without identifying a particular person.[4] Thus, we agree with Wright that, under the corpus delicti rule, the State is required to make a prima facie case that the defendant charged with a violation of RCW 9.41.040(4) is the perpetrator of the crime before his or her extrajudicial statement may be admitted into evidence.

■■ Wright next argues that the State did not meet this requirement because there was no evidence aside from his confession that it was he, and not Smith, who was the person in possession of the pistol before they were arrested.[5] He contends, therefore, that the State did not produce independent evidence of the corpus delicti of the crime. Independent evidence is sufficient if it prima facie establishes the corpus delicti of the crime. A prima facie showing requires evidence that "supports a 'logical and reasonable deduction' that the crime occurred." *State v. Solomon*, 73 Wn. App. 724, 727, 870 P.2d 1019 (quoting *State v. Riley*, 121 Wn.2d 22, 32, 846 P.2d 1365 (1993)), *review denied*, 124 Wn.2d 1028 (1994). A reviewing court assumes the truth of the State's evidence and draws all reasonable inferences in favor of the State. *Solomon*, 73 Wn. App. at 727.

In denying Wright's motion to dismiss, the trial court relied on the following facts: (1) Fountain heard a gunshot; (2) Wright was close to or in the place from which the shot had evidently been fired; (3) Wright gave the officer false information; (4) Wright was next to the bushes with his hands out of view when Fountain returned; (5) Fox found the gun in those bushes; and (6) there was evidence that it had been placed there recently. Apart from the false information Wright gave Fountain, none of these factors sets him apart

---

[4]This case is distinguishable from *State v. Solomon*, 73 Wn. App. 724, 870 P.2d 1019, *review denied*, 124 Wn.2d 1028 (1994), in which we held that this variation on the corpus delicti rule did not apply to charges of possession of a controlled substance. Identity is not essential to establish the fact that a crime occurred because "it is clear that a crime occurred if drugs are in the possession of someone". 73 Wn. App. at 728. Unlike possession of a controlled substance or other contraband items, possession of a pistol is not necessarily unlawful.

[5]There is no dispute that one of them was in possession of the firearm before Fox recovered it from the bushes.

from Smith as the person who was in possession of the pistol. The other facts could apply equally to Wright or Smith, as both engaged in essentially the same conduct. Thus, we must determine whether giving false information to Fountain, standing alone, is sufficient to support a logical and reasonable deduction that Wright was the one in possession of the firearm.

Given the relatively modest amount of evidence required under established case law to meet the independent evidence test, Wright's lie to Fountain is sufficient to support the inference that Wright, not Smith, possessed the pistol. *See, e.g., Corbett*, 106 Wn.2d at 579-80; *Smith*, 115 Wn.2d at 783. It is logical to infer Wright made the statement to deflect suspicion from him. It is similarly logical to infer that a person will attempt to mislead an officer if he is engaged in what he knows is criminal activity. Accordingly, we hold that Wright's statement to Fountain was sufficient, independent of his confession, to establish a prima facie case that Wright, not Smith, committed the crime. Thus, the trial court did not err in admitting Wright's postarrest statements under the corpus delicti rule, and Wright's motion to dismiss was properly denied.

## Prosecutorial Misconduct

During cross examination the prosecutor asked Wright about discrepancies between his and the officers' testimony. The prosecutor questioned Wright about the different accounts of who approached Officer Fountain and told him about the Reliant K car. He also asked about Wright's and Smith's actions when Fountain approached them near the bushes and about the discrepancies between his and Officer Knight's testimony concerning the events in the patrol car. In each instance, the prosecutor elicited testimony from

Wright that his version of the events differed from that of the officers because the officers had "got it wrong". During closing argument, the prosecutor focused on Wright's testimony about the officers' versions of events and argued that, in order to believe Wright, the jury would have to believe that the officers had "got it wrong". Wright argues that the cross examination and closing argument were misconduct which deprived him of a fair trial.

At the outset, it is important to clarify the issues we are addressing. In *State v. Casteneda-Perez*, 61 Wn. App. 354, 362, 810 P.2d 74, *review denied*, 118 Wn.2d 1007 (1991), and other cases in this area we have, unfortunately, not distinguished clearly between what is misconduct during cross examination and what is misconduct during closing argument. We have also not clearly differentiated questions and argument which are merely improper from those which are in fact misconduct. This has blurred the concepts involved. Thus, for example, in *Casteneda-Perez*, we held that cross examination designed to elicit testimony from the defendant that the State's witnesses were lying was improper because it invaded the province of the jury, and was "misleading and unfair [because it makes] it appear that an acquittal requires the conclusion that the police officers are lying." 61 Wn. App. at 362-63. Cross examination does not ordinarily convey to the jury a message that an *acquittal* requires the conclusion that the police officers are lying. This rationale belongs more properly to an analysis of closing argument.

Here, we are faced with issues involving both cross examination and closing argument. As noted above, they are distinct from each other, and we must examine them separately. The first issue is whether it is improper during cross examination for a prosecutor to ask a witness his or her opinion or evaluation of another witness' testimony. The second is whether it is improper during closing arguments for a prosecutor to argue that, to reach a certain result, the jury must find that witnesses are lying or mistaken.

# I

## CROSS EXAMINATION

With this in mind, we first address Wright's argument that the prosecutor committed misconduct by eliciting testimony from him that the officers' versions of events conflict with his because they had "got it wrong". As we noted above, the *Casteneda-Perez* court held it was misconduct for a prosecutor to ask a witness to express an opinion as to whether another witness is lying because it invades the province of the jury and is misleading and unfair.[6] 61 Wn. App. at 362. In *State v. Walden*, 69 Wn. App. 183, 847 P.2d 956 (1993), we held that it was misconduct for a prosecutor to ask a witness to express an opinion as to whether or not another witness is lying *or* mistaken.[7] We reasoned that this was misconduct because it is improper to invite a witness to comment on another witness' accuracy or credibility. 69 Wn. App. at 187.

■■ While we agree with *Casteneda-Perez* that it is misconduct to ask one witness whether another is lying, we disagree that a primary reason for prohibiting these types of questions is that they invade the province of the jury. In our view, the primary and more fundamental rationale for disallowing this type of cross examination is because it places irrelevant information before the jury and potentially prejudices the defendant. To the extent they do in fact prejudice the defendant, we agree that such questions are misleading and unfair. What one witness thinks of the credibility of

---

[6]*See also State v. Suarez-Bravo*, 72 Wn. App. 359, 366-67, 864 P.2d 426 (1994) (reversing the conviction in part because of the prejudicial nature of the prosecution's repeated attempts to get the defendant to call the police witnesses liars and its misrepresentation of the witnesses' testimony in order to create a conflict in the testimony which did not exist); *State v. Padilla*, 69 Wn. App. 295, 299, 846 P.2d 564 (1993) (misconduct to conduct a cross examination designed to compel a witness to express an opinion as to whether other witnesses were lying); *see also State v. Stith*, 71 Wn. App. 14, 856 P.2d 415 (1993).

[7]The State attempts to distinguish *Walden* on the ground that asking whether a witness had "got it wrong" is not the same as asking if the witness was mistaken. We reject this argument because the two are functionally equivalent. Both seek to elicit testimony from one witness regarding the accuracy of another witness' testimony.

another witness' testimony is simply irrelevant. In addition, requiring a defendant to say that other witnesses are lying is prejudicial because it puts the defendant in a bad light before the jury. We further disagree with the conclusion in *Walden* that cross examination about whether another witness was mistaken or "got it wrong" constitutes misconduct. Rather, such questions are merely objectionable to the extent that they are irrelevant and not helpful to the jury.[8] Therefore, a trial court should sustain an objection to this type of cross examination on that ground. Unlike questions about whether someone is lying which are unfair to the witness because there may be other explanations for discrepancies in testimony, *Casteneda-Perez*, 61 Wn. App. at 362-63, questions about whether another witness was mistaken do not have the same potential to prejudice the defendant or show him or her in a bad light. In addition, questions about whether another witness was mistaken may, under certain circumstances, be relevant and probative. Where, for example, there are conflicts between part but not all of various witnesses' versions of the events, such cross examination may be relevant and helpful to the jury in its efforts to sort through conflicting testimony. So long as they are relevant, questions about whether another witness was mistaken or had "got it wrong" are not objectionable or improper.

In this case, the cross examination was not misconduct because the prosecutor did not ask Wright if the officers were lying. It was, however, objectionable because there was nothing in the officers' or Wright's testimony which required clarification. Both versions of the events were completely at odds and either the police or Wright was correct about what had transpired that night. Because there was nothing to clarify, the questions were irrelevant. Although we conclude that the questions were objectionable because they elicited irrelevant evidence, Wright cannot challenge his conviction

[8]ER 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

on this basis because his attorney failed to object to the questions. The issue, therefore, has not been preserved for appeal. In the absence of a proper objection, even the issue of prosecutorial misconduct cannot ordinarily be raised for the first time on appeal. *See State v. Thetford*, 109 Wn.2d 392, 397, 745 P.2d 496 (1987) (failure to raise an evidentiary objection precludes a party from arguing it for the first time on appeal).

Wright argues in the alternative that we should reverse his conviction on the ground of ineffective assistance of counsel because of his attorney's failure to object to the cross examination. In order to establish ineffective assistance of counsel, the defendant must show both that his counsel's performance was deficient and that he was prejudiced by the deficiency. *State v. Tarica*, 59 Wn. App. 368, 374, 798 P.2d 296 (1990) (citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). The likelihood of prejudice was minimal in this case. The prosecutor did not provoke Wright into saying that the officers were lying, and Wright's story was not corroborated by anyone else's testimony. Officers Knight, Fountain and Fox all gave consistent testimony and corroborated each other's version of the events. Because there is no prejudice, Wright cannot establish that he received ineffective assistance of counsel.

## II

### CLOSING ARGUMENT

We next address Wright's argument that the prosecutor committed misconduct during closing argument by stating that, in order to believe Wright, the jury would have to believe that the officers "got it wrong". A related issue was addressed in *State v. Barrow*, 60 Wn. App. 869, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991). Barrow was charged with unlawful delivery of a material in lieu of a controlled substance. He presented a mistaken identity defense and offered testimony contradicting that of the arresting officer. In closing, the prosecutor argued that, by giving contradictory testimony, Barrow was, in effect, calling the State's witnesses liars. 60 Wn. App. at 875. We held that this argu-

ment was improper because it was a mischaracterization of the defendant's testimony and it ignored the possibility that the officers simply could have been mistaken. In rebuttal, the prosecutor told the jury that " 'in order for you to find the defendant *not guilty* on either of these charges, you have to believe his testimony and you have to completely disbelieve the officers' testimony. You have to believe that the officers are *lying*.' " (Italics ours.) 60 Wn. App. at 874-75. We held that this argument was improper because it misstated the jury's duty to return a verdict. We reasoned that

> the jurors did not need to "completely disbelieve" the officers' testimony in order to acquit Barrow; all that they needed was to entertain a reasonable doubt that it was Barrow who made the sale [to the officer].

60 Wn. App. at 875-76.

This case is significantly different from *Barrow*. Here the prosecutor argued that, to *believe* (as opposed to acquit) Wright, the jury would need to believe that the State's witnesses were *mistaken* (as opposed to lying). We conclude that this kind of argument is not objectionable and does not constitute misconduct. It is fundamentally different from the one made in *Barrow* which told the jury that, to *acquit* the defendant or find him or her not guilty, it must conclude that the State's witnesses were *lying*.[9] The argument made in *Barrow* was improper because, as the *Casteneda-Perez* court observed, it is misleading

> to make it appear that an *acquittal* requires the conclusion that the police officers are *lying*. The testimony of a witness can be unconvincing or wholly or partially incorrect for a number of reasons without any deliberate misrepresentation being involved. The testimony of two witnesses can be in some conflict, even though both are endeavoring in good faith to tell the truth.

*Casteneda-Perez*, 61 Wn. App. at 362-63.[10] (Italics ours.) The

---

[9]*See also State v. Riley*, 69 Wn. App. 349, 848 P.2d 1288 (1993). In *Riley*, the prosecutor's argument that, to believe the defendant, the jury would have to find the State's witnesses were not telling the truth, was held improper under *Barrow*. 69 Wn. App. at 353 n.5. We agree with *Riley* in that there is no functional difference between "lying" and "not telling the truth".

[10]Although the court made its observation in the context of cross examination, as discussed *supra* at pages 11-12, this rationale is more appropriately applied in the context of closing argument.

argument made here did not present the jury with a false choice between believing the State's witnesses or acquitting Wright. Therefore, it was not misleading.

Furthermore, the argument here did not misstate the jury's duty to return a verdict, as was the case in *Barrow*. As we observed in that case, a jury need only find that the State has not proven its case beyond a reasonable doubt in order to acquit a defendant. A jury does not necessarily need to resolve which, if any, of the witnesses is telling the truth in order to conclude that one version is more credible or accurate than another. *Barrow*, 60 Wn. App. at 876. The argument here did not present the danger that the jury would be misled in believing that it had to determine if witnesses were lying in order to render a verdict.

Where, as here, the parties present the jury with conflicting versions of the facts and the credibility of witnesses is a central issue,[11] there is nothing misleading or unfair in stating the obvious: that if the jury accepts one version of the facts, it must necessarily reject the other. This argument is well within the "wide latitude" afforded to the prosecutor "in drawing and expressing reasonable inferences from the evidence." *State v. Hoffman*, 116 Wn.2d 51, 95, 804 P.2d 577 (1991).

In sum, we hold that it is generally impermissible to cross-examine a witness in order to elicit an opinion from the witness regarding the credibility of another witness' testimony. Thus, questions of one witness whether another is lying or not telling the truth are improper and constitute misconduct because they are designed to elicit testimony which is both irrelevant and prejudicial. However, where conflicts in the testimony make questions about the discrepancies relevant, questioning a witness about whether he or she believes another is mistaken is permitted. Where no

---

[11]Wright testified that it was Smith who had the pistol and that Wright admitted to possession because Knight promised him he would receive only a citation. Knight testified that Wright asked to speak to Knight alone and admitted to possession of the pistol on his own initiative. The jury had to decide which version it believed.

such conflict exists, however, those questions are irrelevant, and objectionable.[12]

We further hold that, where a jury must necessarily resolve a conflict in witness testimony to reach a verdict, a prosecutor may properly argue that, in order to *believe* a defendant, the jury must find that the State's witnesses are *mistaken*. This argument is not objectionable because it does no more than state the obvious and is based on permissible inferences from the evidence. It is misconduct, however, for a prosecutor to argue that, in order to *believe* a defendant, a jury must find that the State's witnesses are *lying*. Such arguments are misleading because the jury does not need to conclude that the State's witnesses are lying to believe the defendant; it could simply conclude that the State's witnesses are mistaken. Similarly, it is misconduct to argue that, in order to *acquit* a defendant or find him or. her not guilty, the jury must find that the State's witnesses are either lying or mistaken. This argument is improper because it is misleading and misstates the jury's role in reaching its verdict in a criminal case, which is to determine whether the State has met its burden of proving the case beyond a reasonable doubt. Accordingly, we hold that the closing argument here was not improper.[13]

---

[12]As noted *supra*, although such questions are objectionable, they do not rise to the level of misconduct.

[13]The following matrix may be helpful in sorting out the numerous variations on the themes discussed in this opinion:

|  | Prosecutorial Misconduct | Objectionable Conduct | Permissible Conduct |
|---|---|---|---|
| Cross Examination | State's witnesses lying? | State's witnesses mistaken? (where not relevant) | State's witnesses mistaken? (where relevant) |
| Closing Argument | To acquit defendant, must find State's witnesses lying and/or mistaken or to believe defendant, must find State's witnesses are lying. | To believe defendant, must find State's witnesses mistaken, where not relevant. | To believe defendant, must find State's witnesses mistaken, where relevant. |

## OFFENDER SCORE

Under RCW 9.94A.360(6)(a), a sentencing court is to count an offender's prior convictions separately in computing his or her offender score, except where prior adult offenses were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct. Those prior offenses

> shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently whether those offenses shall be counted as one offense or as separate offenses, and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used[.]

RCW 9.94A.360(6)(a).

At the time of sentencing, Wright had seven prior adult felony convictions, which had resulted in several concurrent sentences. Wright argued below that the court should consider the convictions for which he received concurrent sentences as one in calculating his offender score. The court ruled that it did not have discretion to do so and counted each of the prior convictions separately. Wright challenges his sentence on the ground that the court erred in failing to consider whether his prior adult felony convictions for which concurrent sentences were imposed should have been treated as one offense in calculating his offender score.[14] The State argues that the court properly interpreted RCW 9.94A.360(6)(a) as requiring it to consider all prior adult felony convictions as separate offenses in calculating Wright's offender score and precluding any discretion by the court to do otherwise.

---

[14]We reject the State's argument that Wright cannot appeal the calculation of his offender score because he received a standard range sentence. Although RCW 9.94A.210(1) precludes an appeal of a standard range sentence, a defendant is not precluded from appealing the procedure by which the sentence was imposed if the sentencing court had a duty to follow some specific procedure required by the Sentencing Reform Act of 1981, and it failed to do so. *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). *See also State v. Ammons*, 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986). As discussed below, the failure to exercise discretion under RCW 9.94A.360(6)(a) is a procedural error under *Mail*.

This issue was addressed in *State v. Lara*, 66 Wn. App. 927, 834 P.2d 70 (1992). The *Lara* court concluded that RCW 9.94A.360(6)(a) grants the current sentencing court discretion to determine whether offenses which were served concurrently will be counted as one or as separate offenses. It held that nothing in the statute restricts the current sentencing court to the previous sentencing court's determination of how the prior convictions should be considered. 66 Wn. App. at 931. We agree with the interpretation of RCW 9.94A.360(6)(a) in *Lara* and follow it here. We acknowledge, as did the *Lara* court, that this interpretation of the statute may permit a defendant to have a lower offender score at a later sentencing than he or she had at an earlier one. 66 Wn. App. at 931. However, we believe that this is the reading required by the plain language of the statute and by the rule of lenity. *See State v. Dunbar*, 117 Wn.2d 587, 586, 817 P.2d 1360 (1991) (rule of lenity requires the court to adopt an interpretation most favorable to a criminal defendant).

As enacted, this section of the statute read in relevant part:

> (8) In the case of multiple prior convictions for the purpose of computing the offender score, count all adult convictions served concurrently as one offense . . ..

RCW 9.94A.360. Under the original statute, all adult convictions for which the sentences had run concurrently were to be counted as one offense. Under the current version of the statute, quoted *supra*, all convictions must be counted separately unless (1) a court earlier found that the prior offenses constituted the same criminal conduct under RCW 9.94A.400-(1)(a) or (2) the current sentencing court determines that *other* prior adult offenses for which the defendant received concurrent sentences should be counted as one offense. Presumably, the "other" prior adult offenses under RCW 9.94A.400(2) are those for which the defendant received a concurrent sentence but which a prior court had not determined

constituted the same criminal conduct. Thus, the current sentencing court is not bound by an earlier determination of whether to count the offenses as one offense or separate offenses, nor is it required to find that the offenses constituted the same criminal conduct under RCW 9.94A.400 in order to count them as one offense. Furthermore, the language of the statute is mandatory, stating that the current sentencing court *shall* determine whether the offenses are to be counted as one offense or separate offenses. RCW 9.94A.360(6)(a). Because the court did not exercise its discretion to make the required determination, we remand with instructions that it do so.[15]

The conviction is affirmed, and the case is remanded for calculation of Wright's offender score and resentencing if necessary.

PEKELIS, C.J., and BECKER, J., concur.

After modification, further reconsideration denied March 28, 1995.

Review denied at 127 Wn.2d 1010 (1995).

---

[15]We recognize that the statute provides no criteria or standards to guide the trial court in making this determination and that it may have to rely on arguments of counsel to decide what is equitable and comports with the purposes of the Sentencing Reform Act of 1981. By remanding, we express no opinion as to how the trial court should exercise its discretion under RCW 9.94A.360(6)(a).