IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37123-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MANUEL CARROSCO MENDOZA JR., | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Manuel Mendoza appeals his conviction for unlawful possession of a firearm. He asserts that his trial counsel performed ineffectively when cross-examining at length two law enforcement officers about the initial responding officer's exclusion of another suspect as the one who carried a weapon in a backpack. We conclude that the questioning was a legitimate trial strategy and affirm Mendoza's conviction.

FACTS

We outline the facts now, but provide more details when outlining the testimony of law enforcement officers that gives rise to the claim of ineffective assistance of counsel. On the evening of October 27, 2017, Yakima Police Sergeant Ritchie Fowler responded to a report of a crime involving a gun at a Subway sandwich shop in Yakima.

As he neared the shop, he stopped a man who matched the description of the crime suspect.

The detained individual gave Sergeant Ritchie Fowler permission to check his backpack. Fowler felt the backpack and discerned what he believed to be a gun. As Fowler attempted to seize the bag, the man threw the backpack at him and ran. Fowler gave chase, but lost sight of the individual. Fowler opened the backpack and discovered a 40-caliber pistol.

Later that night, another law enforcement officer discovered a Washington State identification card belonging to Manuel Mendoza in the same vicinity. Sergeant Ritchie Fowler identified Manuel Mendoza as the man who bore the backpack containing the gun. During the course of the evening and before the apprehension of Mendoza, Fowler ruled out a second suspect stopped by police as the individual who threw the backpack.

PROCEDURE

The State of Washington charged Manuel Mendoza with first degree unlawful possession of a firearm. At trial, Mendoza relied on a theory of mistaken identity. During cross-examination of two police officers, the officers testified that Sergeant Ritchie Fowler informed them that the other suspect whom they had detained was the wrong individual.

During trial, the prosecution first called Sergeant Ritchie Fowler to testify. According to Sergeant Fowler, on October 27, 2017 at 7:30 p.m., he responded to a report

2

of a crime at the Subway shop on Yakima Avenue and First Street.  Emergency dispatch described the suspect as a white male wearing tennis shoes, basketball shorts, and a gray sweatshirt with a West Coast Chopper logo.  When Fowler responded to the scene, he saw an individual matching the description of the suspect in an alley.  Fowler stopped and reversed his cruiser, but lost sight of the individual.  Fowler entered and traversed the alley.  He again spotted the same individual walking near a motel.  Because the person matched the description given of the suspect, Sergeant Fowler blocked the individual's path, with his patrol car, between the motel and a laundromat.  The individual also wore a hat.

According to his trial testimony, an unaccompanied Sergeant Ritchie Fowler exited his car, stopped the individual, and explained the purpose of his detaining the man.  The man stood two feet in front of Fowler.  Sergeant Fowler told the individual that he matched the description of the suspect seen leaving the scene of a crime at Subway.  Fowler told the individual to empty his pockets.  The individual removed a cell phone, among other objects.  The individual wore a backpack, and Sergeant Fowler asked if he could check the pack.  The individual responded affirmatively, and Fowler felt the backpack.  Sergeant Fowler discerned a hard object that felt like a gun.  Fowler grabbed the top of the backpack in order to seize it.  The individual removed the backpack from his back and threw the backpack at Fowler.  The man ran and Fowler pursued him.  The

individual outran the backpack laden officer.  Sergeant Fowler opened the backpack and saw a semiautomatic 40-caliber pistol.

During trial, Sergeant Ritchie Fowler identified Manuel Mendoza as the individual whom he confronted on the evening of October 27.  Fowler testified that he recognized him from their interaction between the laundromat and the motel.

Upon the suspect disappearing from sight, Sergeant Ritchie Fowler called for additional officers and a K-9 dog to assist.  The responding officers and Fowler traced the direction that the individual had fled.  While Fowler attempted to determine the individual's location, two officers discovered a Washington identification card across the street from where Fowler had spoken with the suspect.  The card belonged to Manuel Mendoza.

On cross-examination of Sergeant Ritchie Fowler, defense counsel inquired as to the lighting in the parking lot in which Sergeant Fowler confronted the suspect.  Fowler responded:

> The whole area is lit up right there . . . . the Red Apple shines kind of down on the—on the lot . . .  I didn't need any lighting.

Report of Proceedings (RP) at 183.  Sergeant Fowler estimated that he observed the individual that night for one to two minutes.

The State's next witness, Yakima Police Officer Darius Williams, testified that he responded, to the report of a crime.  Williams thereafter received a communication from

Sergeant Ritchie Fowler that an individual, similar in description to the suspect of the Subway crime, had run from him. Williams, located a block away, responded to Sergeant Fowler's location and saw him in pursuit of a male. Officer Williams unsuccessfully attempted to block the suspect with his police cruiser. He saw the man briefly.

Officer Darius Williams followed the fleeing suspect eastbound as the individual ran through business properties. Officer Cole then contacted Williams and informed him that he had detained a suspect on North First Street. The State questioned Williams:

> Q  Okay. But that wasn't the suspect that you were looking for, was it?
> A  It was not the one we were following, no.

RP at 191.

During trial, Officer Darius Williams further testified that he returned to the area where he had last seen the suspect fleeing from Sergeant Ritchie Fowler. He then found a Washington State identification card on the ground. The identification card pictured Manuel Mendoza. The card was clean and flat, despite its high traffic location, leading Officer Williams to opine that the card had recently fallen to the ground.

On cross-examination, defense counsel questioned Officer Darius Williams:

> Q  Officer Williams, when you first arrived you saw—suspect running? —that correct?
> A  To assist—Sgt. Fowler?
> Q  Yeah.
> A  Yes, sir.
> Q  And—he was on—side of north Second Street?
> A  Yes.

5

Q  Running through businesses?

A  Uh-huh.  Eastbound.

Q  You didn't get a real good look at—person that was running, correct?

A  Not—face, no.

Q  Okay.  Shortly after you saw this, you got a call about another—subject they had found on—north First Street.

A  On the 500 block of north First Street, yes, sir.

Q  And, he was (inaudible) the—possible suspect at that time.

A  Uh-huh.

Q  *But apparently somebody determined he was not the person you were looking for.*

A  *Yes.  Sgt. Fowler and I—responded to the area and he [Fowler] told us that that was not the suspect.*

Q  Okay.  So that's how it was determined, because Sgt. Fowler said he was—

A  Uh-huh.

Q  —suspect.  Okay.

This person was taken down and cuffed, (inaudible).

A  Yes.

Q  Okay.

RP at 195-96 (emphasis added).

During trial, the State next called K-9 Officer Robert Walters to testify.  On October 27, 2017, Officer Walters responded to a request from Sergeant Ritchie Fowler to conduct a K-9 track.  The dog did not track a suspect.  Walters and Officer Darius Williams decided to walk the area where Fowler reported a suspect had run.  He and Officer Williams went to this location and found an identification card.  Walters repeated Darius Williams' testimony about the cleanliness of the card in a highly trafficked area.  The card listed the name of Manuel Mendoza.  Officer Walters and Officer Williams

called Sergeant Ritchie Fowler to the scene, and he confirmed that the person on the

identification card matched his memory of the appearance of the suspect he had pursued.

On cross-examination, defense counsel inquired whether Officer Robert Walters

first contacted a suspect other than Manuel Mendoza. Officer Walters affirmed the

stopping of another person, and Walters elaborated:

> A . . . Officer Cole called down that he had—thought he detained someone that was matching the description from the initial call. Officer Cole (inaudible) to detain him, and I showed up to that location first, in order to detain this person and place him into handcuffs, yes, sir.
> Q Okay. Ultimately it was determined that was not the person— you were looking for.
> A Correct. He was not involved in the initial dispatch call.
> Q How did—how did you make that determination.
> A To be honest I—I don't note [that] in my report of how we determined Mr. Willers was not involved. I don't know if it was the description, his location or it was from video surveillance from—the initial dispatched crime. I don't know off the top of my head.
> Q Okay. When you had contact with him he was not exactly cooperative was he?
> A No, he was not.
> Q In fact you thought he might be—(inaudible) to find a weapon on him.

RP at 205-06.

Officer Robert Walters testified that he determined that this other suspect did not

have a firearm. Defense counsel then inquired if Officer Walters ever spoke with

Sergeant Ritchie Fowler when he had contacted the other suspect. Officer Walters

explained that Sergeant Fowler came to the location where Officer Cole detained the

7

other suspect and determined that he was not involved. Officer Walters acknowledged that he never saw the suspect that Sergeant Ritchie Fowler initially pursued.

Defense counsel cross-examined Officer Robert Walters about his direct testimony of the night being bright at 7:30 p.m. in late October. Counsel also questioned whether Cobo, Officer Walters's dog, had traced near the discovered identification card. Defense counsel asked why the dog failed to trace the suspect by the scent of the owner on the identification card. Officer Walters did not directly answer the question, but responded that he directed Cobo to follow the scent of a human and not to discover objects.

During trial, the State also called Officer Casey Kim to testify. Officer Kim assumed custody of the backpack and its contents, including the firearm. Kristin Drury, the Yakima Police Department forensic lab supervisor, later testified that the firearm from the backpack functioned. She discovered no fingerprints on the pistol. Drury swabbed the firearm for a DNA sample, but did not send the swabs for testing.

At the conclusion of its case, the State recalled Sergeant Ritchie Fowler to testify. Sergeant Fowler testified that, pursuant to his report, he now recalled that the person he detained removed an identification card when he asked the man to empty his pockets. Fowler confirmed that, when Officer Robert Walters and Officer Darius Williams showed him the Washington identification card, he identified the individual as the person who threw the backpack at him.

LAW AND ANALYSIS

On appeal, Manuel Mendoza claims that he received ineffective assistance of counsel because counsel elicited testimony from two witnesses confirming that Sergeant Ritchie Fowler ruled out another suspect as the one who bore the firearm in the backpack. He argues that defense counsel lessened the State's burden by introducing this testimony. We disagree. The questioning of the officers served a legitimate trial strategy of showing that other officers suspected another individual. The questioning also served to show that Sergeant Ritchie Fowler, alone, turned officers away from that suspect and toward Mendoza. To establish ineffective assistance of counsel, a defendant must establish that his attorney performed deficiently and this deficient performance prejudiced the defendant. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Failure to show either prong of the test defeats the claim. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance, a defendant must present facts which show that the performance fell below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The defendant must overcome a strong presumption that counsel's performance was not deficient. *State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). A defendant shows prejudice when there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d at 335.

9

This court will not find counsel's conduct to be deficient if it constituted a "legitimate trial strategy or tactics." *State v. Kyllo*, 166 Wn.2d 856, 863 (2009). When the effect of defense counsel's performance lowers the State's burden of proof, counsel has not engaged in a legitimate trial strategy. *State v. Kyllo*, 166 Wn.2d at 869; *State v. Rodriguez*, 121 Wn. App. 180, 187, 87 P.3d 1201 (2004). A fair assessment of attorney performance requires that we eliminate the distorting effects of hindsight and evaluate the conduct from counsel's perspective at the time. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

Manuel Mendoza presented a defense theory of mistaken identity. In turn, Mendoza focuses his argument of ineffective assistance of counsel on the testimony of three witnesses. The State's first witness, Sergeant Ritchie Fowler, testified on cross-examination that, on the night of October 27, 2017, he spoke with the suspect for up to two minutes. Based on this interaction, he identified, in the courtroom, Manuel Mendoza as the individual with whom he had spoken. The prosecution never inquired about another detained man that was considered a possible suspect.

Defense counsel raised the subject of another suspect during cross-examination of Officers Darius Williams and Robert Walters. In questioning Officer Williams, defense counsel, without framing a question, noted that someone had determined that the other suspect was not the individual with whom Sergeant Fowler interacted. In response, Williams stated, "Yes. [Sergeant] Fowler and I—responded to the area and he told us

10

that that was not the suspect." RP at 196. Defense counsel did not object to this hearsay remark.

During cross-examination of Officer Robert Walters, defense counsel asked whether Officer Walters spoke with Sergeant Ritchie Fowler while he detained the other suspect. Walters initially answered that he did not recall speaking with Sergeant Fowler directly. He elaborated, however, that Fowler determined that the individual was not the right suspect.

Manuel Mendoza complains that trial defense counsel erred by not objecting to Officer Darius Williams's unsolicited comment that Sergeant Ritchie Fowler determined that the other individual was not the correct suspect. He further criticizes counsel for allowing two witnesses to state that Fowler ruled out the other suspect. Mendoza argues that the testimony rendered Fowler more credible in the jurors' eyes. By connecting Fowler with the elimination of the other individual from suspicion, defense counsel purportedly assisted the prosecution and lessened its burden.

In hindsight, Manuel Mendoza might be correct, although we doubt such. Regardless, Mendoza fails to note that Sergeant Ritchie Fowler identified Mendoza in court as the one in whose backpack he found the gun. Defense counsel needed to detract from this identification and one legitimate strategy in doing so was to show that two other officers thought another person might be the suspect. The testimony of the two officers also supported a defense argument that law enforcement shortcut the investigation.

In addition to our conclusion that trial counsel did not perform ineffectively, we conclude that Manuel Mendoza shows no prejudice. Because of the strength of Sergeant Ritchie Fowler's identification of Mendoza, the outcome would have remained the same regardless of whether trial counsel questioned the other officers about their interaction with the other suspect.

## STATEMENT OF ADDITIONAL GROUNDS

Manuel Mendoza forwards six additional grounds for review.

1. Manuel Mendoza contends that defense counsel provided ineffective assistance of counsel when he failed to communicate with him during the course of his prosecution and thereby denied him the right to assist in his own defense. Again, to show ineffective assistance of counsel, Mendoza must show that his counsel performed deficiently and that this performance served to prejudice him. *State v. Kyllo*, 166 Wn.2d 856, 862 (2009).

Manuel Mendoza claims he encountered a difficult time reaching defense counsel with whom he wanted to prepare for trial. He believes that his input would have strengthened his defense. Nevertheless, Mendoza fails to explain how his assistance would have led to a successful defense.

2. Manuel Mendoza next contends that his trial counsel performed ineffectively when failing to suppress evidence of DNA and of a fingerprint analysis. Nevertheless, Kristin Drury, the Yakima Police Department forensic laboratory supervisor, testified that

12

she did not find any fingerprints on the firearm. Drury swabbed the gun for DNA, but did not send the swabs for analysis.

3. Manuel Mendoza contends that defense counsel performed ineffectively when leading witnesses to where the jury is unable to assess the credibility of the witnesses. He complains that leading questions by his trial counsel were calculated and pervasive. We note that leading questions are permitted on cross-examination. Mendoza fails to show that defense counsel acted improperly or that he suffered prejudice by the questions.

4. Manuel Mendoza contends that a jury instruction should have informed the jury on how to weigh discrepancies in witness' testimony. One of the jury instructions that the trial court delivered read:

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

Clerk's Papers at 9. This common jury instruction properly instructed the jury.

5. Manuel Mendoza cites to legal authority which mentions the establishment of the corpus delicti of a crime. The term corpus delicti may be used when describing to

whether the State has successfully met its burden of proving a case beyond a reasonable

doubt. *State v. Angulo*, 148 Wn. App. 642, 648, 200 P.3d 752 (2009). The corpus

delicti of unlawful firearm possession requires the State to prove a connection between

the defendant and the firearm possession. *State v. Wright*, 76 Wn. App. 811, 818, 888

P.2d 1214, *review denied*, 127 Wn.2d 1010, 902 P.2d 163 (1995). Mendoza suggests that

insufficient evidence existed to connect him to the firearm in his prosecution.

Nevertheless, testimony established that Sergeant Ritchie Fowler identified Mendoza as

the individual whom he confronted in the laundromat parking lot. Fowler felt the

backpack and felt a gun. The backpack contained the gun. Mendoza threw the backpack

containing the firearm at Fowler.

6. Manuel Mendoza contends that the prosecuting attorney committed misconduct

by telling the jury "[a]nd your chances of winning the lottery are probably about as good

as getting bit by a shark in Yakima." RP at 308. He contends that this comment meant

that the jury could only acquit him with an emotional decision. The point of the

prosecutor's argument is difficult to discern even in context. Nevertheless, the comment

does not convey that the jury was required to make a decision based on emotion.

## CONCLUSION

We affirm Manuel Mendoza's conviction for unlawful possession of a firearm.

No. 37123-9-III
*State v. Mendoza*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Staab, J.