[No. 48237–3.   En Banc.   March 4, 1982.]

*In the Matter of* R., ET AL, *Appellants.*

*Janet L. Rice* and *Wayne Lieb* of *Seattle–King County Public Defender Association,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Carol Horan Rainey* and *Stephen Klasinski, Assistants,* for respondents.

ROSELLINI, J.—These cases are before the court on petitions by Western State Hospital to extend for 90 days the detention of patients alleged to be gravely disabled. At each hearing, the attending psychiatrist gave his opinion, based on observations of and interviews with the patient, as to his or her mental condition. In each case the attorney for the patient objected to this testimony, claiming that it was

subject to the physician–patient privilege. In each case the objection was overruled, and in each case further detention was ordered.

Each of the patients involved had been involuntarily committed for 14 days, pursuant to RCW 71.05.240. While in the hospital, each patient had been advised that he or she had a right to remain silent and that the interviews were not confidential.

The sole question before the court is: Does the physician–patient privilege apply in an involuntary commitment proceeding, where the issue is whether further treatment is needed, and where the patient has not been told that his psychiatrist is communicating with him solely for treatment purposes?

Involuntary commitments are covered under RCW 71.05, which was designed for the following purposes, among others:

(1) To end inappropriate, indefinite commitment of mentally disordered persons and to eliminate legal disabilities that arise from such commitment;

(2) To provide prompt evaluation and short term treatment of persons with serious mental disorders;

(3) To safeguard individual rights;

(4) To provide continuity of care for persons with serious mental disorders;

RCW 71.05.010(1)–(4).

The act provides a procedure for involuntary commitment, with express protection of the individual's due process rights. The initial detention is for 72 hours (RCW 71.05.150); then a hearing is necessary if the patient is to be detained for 14 additional days (RCW 71.05.230, .240). An additional hearing is required if it is believed that he needs further treatment (RCW 71.05.280–.310). This is the 90–day treatment period which is involved in these proceedings. There are also provisions for further extensions, after hearings (RCW 71.05.320). Provision for the waiver of the physician–patient privilege is found in RCW 71.05.250, which pertains to 14–day detentions. That section provides:

At the probable cause hearing the detained person shall have the following rights in addition to the rights previously specified:

(1) To present evidence on his behalf;

(2) To cross–examine witnesses who testify against him;

(3) To be proceeded against by the rules of evidence;

(4) To remain silent;

(5) To view and copy all petitions and reports in the court file.

The physician–patient privilege shall be deemed waived in proceedings under this chapter when a court of competent jurisdiction in its discretion determines that it is unreasonable for the petitioner seeking fourteen–day involuntary treatment to obtain a sufficient evaluation of the detained person by a psychiatrist or psychologist or other health professional and such waiver is necessary in the opinion of the court to protect either the detained person or the public.

Whenever the physician–patient privilege is deemed waived pursuant to this section, the waiver shall be limited to the introduction of relevant and competent medical records or testimony of an evaluation or treatment facility or its staff, a facility of the department of social and health services or its staff, or a facility certified for ninety–day treatment by the department of social and health services or its staff for the purpose of meeting evaluation requirements contained in chapter 10.77 RCW and chapter 71.12 RCW: *Provided however,* That the physician–patient privilege shall not be waived if the physician specifically identifies himself to the detained person as one who is communicating with that person for treatment only: *And provided further,* That the privilege shall not extend to incident reports involving the detained person.

The record maker shall not be required to testify in order to introduce medical records of the detained person so long as the requirements of RCW 5.45.020 are met except that portions of the record which contains opinions as to the detained person's mental state must be deleted from such records unless the person making such conclusions is available for cross–examination.

There is no comparable provision in the sections providing for a 90–day extension. However, 71.05.310 contains the

following pertinent provision:

> The burden of proof shall be by clear, cogent, and convincing evidence and shall be upon the petitioner. The person shall be present at such proceeding, which shall in all respects accord with the constitutional guarantees of due process of law and the rules of evidence pursuant to RCW 71.05.250.

This section incorporates, by reference, the provisions of RCW 71.05.250 as they apply to the rules of evidence. Standing alone, RCW 71.05.250 appears on its face to apply only where a petitioner is seeking an order for 14–day involuntary treatment. However, its terms are adaptable to other proceedings. In providing that the 90–day extension hearing shall accord with the rules of evidence pursuant to RCW 71.05.250, the Legislature did not exclude the provision for waiver of the physician–patient privilege.

█ The physician–patient privilege is designed to render communications between physician and patient confidential, and thus allow freedom in the exchange of information to the end that the patient's ailments may be properly treated. *State v. Boehme,* 71 Wn.2d 621, 430 P.2d 527 (1967); *State v. Miller,* 105 Wash. 475, 178 P. 459 (1919). The waiver of the privilege in the present circumstances is also designed to facilitate treatment. There is statutory protection for the confidentiality of commitment records.[1] For these reasons, the compulsory waiver of the privilege benefits more than it harms the patient.

At common law there was no physician–patient privilege. However, most states, including Washington, have created a statutory privilege. *See* E. Cleary, *McCormick on Evidence* §§ 98–105 (2d ed. 1972). RCW 5.60.060(4) reads:

> (4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action

---

[1]RCW 71.05.390 provides that information and records of both voluntary and involuntary commitments shall be kept confidential, with certain exceptions, including the following: Such records may be disclosed "(6) To the courts as necessary to the administration of this chapter." In addition, the proceedings are closed to the public and the court records are kept confidential.

as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient, but this exception shall not apply in any judicial proceeding regarding a child's injuries, neglect or sexual abuse, or the cause thereof.

The claim of privilege ordinarily arises in adversary proceedings. The proceeding is one designed for the protection of the patient, as well as the public. Of course, the patient is being held against his will and is entitled to scrupulous due process for that reason; but at the same time the purpose of the statute should not be sacrificed in order to preserve a privilege which has little value in the circumstances.

It is suggested that, unless the privilege is preserved for these patients, they will be reluctant to confide in the psychiatrists who treat them. But it is apparent from the very fact that these persons are hospitalized against their will, they are unable to recognize their need for help. Thus handicapped, they are apt to resist treatment and the confidences which it entails, in any event. We must assume that if the medical staff, endowed as it is with professional knowledge upon the subject, believed that to preserve the privilege would facilitate the treatment process in these circumstances, it would adopt some system which would eliminate the need for waiver. As it is, there is nothing before us to show that the compulsory waiver of the privilege has any significant effect on the treatment and recovery of involuntary mental patients.

In resolving a question of statutory construction, the spirit and intent of the law should prevail over the letter of the law. *Janovich v. Herron,* 91 Wn.2d 767, 592 P.2d 1096 (1979). Furthermore, if an act is subject to two interpretations, that which best advances the legislative purpose should be adopted. *Hart v. Peoples Nat'l Bank,* 91 Wn.2d 197, 588 P.2d 204 (1978). One of the expressed purposes of the statute is to "provide continuity of care for persons with serious mental disorders". At the same time, individual rights are to be safeguarded.

The Legislature recognized the importance of the

physician–patient privilege, but found it necessary and desirable to provide for a limited[2] and conditional compulsory waiver of that privilege where a physician's testimony is needed in order to provide the court with the information which is required if an intelligent judgment is to be made with respect to further detention of the patient. There is no showing that such a waiver is less important in 90–day extension hearings than in 14–day hearings.

While RCW 71.05.250 contemplates that an evaluation will be obtained by a nontreating physician where this can reasonably be done, the very nature of mental illness, because the symptoms are often sporadic rather than continuous, suggests that the treating physician is in a much better position to testify to the patient's condition than is one who conducts only a brief examination. If the evaluating physician strengthens his diagnosis by resort to the patient's medical records, the privilege is likely to be invaded in any case. And if those records are not resorted to, the petitioner will be handicapped in sustaining his burden of proof, with the result that persons in serious need of treatment may be dismissed from the institution.

The respondents also point out that Western State Hospital has a limited professional staff, all of whose time and attention is needed in the treatment of patients. They maintain that it would be an irrational use of these resources to require some psychiatrists to spend their time evaluating patients who are under the care of others, with the result that less professional time would be spent where it is most needed—in the treatment of patients. The appellants advise that this is precisely what is done at some other institutions, such as the King County Hospital at Seattle, but we are not shown that conditions or circumstances are the same at these hospitals.

---

[2]The Legislature did not purport to provide for a restriction on the privilege in any circumstances other than court hearings conducted for the sole purpose of determining whether the patient is gravely disabled, or presents a likelihood of harm to himself or others and is therefore in need of further treatment.

The overcrowded conditions at the institution make it unlikely that the professional staff would attempt to keep persons confined unless it is convinced that further hospitalization is needed. In the cases before this court, it is not disputed that all are indeed gravely disabled and in need of treatment.

It is also significant that the compulsory waiver of the privilege is designed for the benefit of the patient, in order that he may have the treatment which his attending psychiatrist has concluded that he needs, even though the patient himself, because of his illness, may not appreciate that need.

Inasmuch as the waiver of the privilege is designed to facilitate the furnishing of treatment where it is needed, and is conducive to that end, we conclude that the Legislature, when it incorporated RCW 71.05.250 in RCW 71.05-.310, intended that the waiver provision should apply in 90–day extension hearings, as well as 14–day extension hearings. Furthermore, we conclude that under the circumstances the court commissioner who conducted these hearings could justifiably find that it was unreasonable to require the petitioner to obtain evaluations from nontreating psychiatrists.

In the one case which has come to our attention involving the question whether the physician–patient privilege applies in a mental illness proceeding, the court reached the same result. *In re Winstead,* 67 Ohio App. 2d 111, 425 N.E.2d 943 (1980). There, as here, the privilege was conferred by statute. Unlike our statute, the Ohio statute providing for treatment of the mentally ill contained no provision for a mandatory waiver of the privilege. Nevertheless, the appellate court found no difficulty in concluding that the privilege did not apply to such proceedings. It was held that the privilege did not arise unless the patient voluntarily consulted the physician, which was not the case where he was involuntarily committed.

Inasmuch as we have statutory authority for a mandatory waiver of the privilege in these circumstances, we need not

decide whether we would be inclined to adopt that reasoning were there before us no expression of legislative intent upon the subject.

██ ██ The appellants suggest that if the statutory privilege does not apply, the constitutional "right of privacy", gleaned from a penumbra of other constitutional rights, protects from disclosure their communications with the institutional doctor. We have said that the privilege is a statutory "procedural safeguard rather than a rule of substantive or constitutional law." *State v. Boehme,* 71 Wn.2d 621, 634, 430 P.2d 527 (1967). The appellants cite a Pennsylvania juvenile proceeding, in which a divided court (3 to 3) held that a juvenile court could not compel production of the records of a psychiatrist who had been consulted voluntarily by the juvenile's mother. Insofar as we are able to ascertain from the published opinions, only one judge decided the case upon the constitutional question. One concurring judge, Roberts, was of the opinion that the records were protected by the statutory physician–patient privilege and that it was unnecessary to reach any constitutional question. The other concurred in the result, without opinion. The lead opinion, in deciding that a constitutional right of privacy was involved, stressed the reliance of the patient upon that right in seeking the help of the doctor. We do not have that situation here.

Assuming that the lead opinion in *In re "B",* 482 Pa. 471, 394 A.2d 419 (1978) has validity as applied to the facts of the case, nevertheless the right to privacy is not an absolute one, but one which must be considered against important interests of the State. *Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973); *State v. Smith,* 93 Wn.2d 329, 610 P.2d 869 (1980). Here, we have not only the State's interest in seeing that the mentally ill receive treatment, but the patient's interest in that goal as well. Those interests, we believe, should prevail over any privacy interest which the appellants may have in excluding testimony by their attending psychiatrists as to their need for further treatment.

The decisions of the commissioner are affirmed.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied April 26, 1982.