[No. 61544-6. En Banc. July 20, 1995.]

THE STATE OF WASHINGTON, *Appellant*, v. SEAN BLAIR MCCRAW, *Respondent*.

*Jim Sweetser, County Prosecutor*, and *Kevin Korsmo, Deputy*, for appellant.

*Sean McCraw, pro se*, and *Paul Wasson*, for respondent.

ALEXANDER, J. — This case is before us on direct review of a sentence that was imposed by the Spokane County Superior Court on Sean McCraw for attempted first-degree escape. The State asserts on appeal that the sentencing court erred in determining the standard range sentence for McCraw's current conviction, arguing that it wrongly considered some of McCraw's prior convictions as one offense for purposes of calculating the offender score. We affirm.

When Sean McCraw, then age 25, was sentenced in Spokane County Superior Court for attempted first-degree escape, he had already compiled a substantial adult criminal record, as follows:

| | Sentencing Date | Offense |
|---|---|---|
| 1. | July 17, 1987 | Second-degree theft |
| 2. | April 26, 1988 | Second-degree burglary |
| 3. | April 26, 1988 | Third-degree assault |
| 4. | November 15, 1989 | Second-degree burglary |
| 5. | November 15, 1989 | First-degree possession of stolen property |
| 6. | August 22, 1991 | Second-degree possession of stolen property |
| 7. | March 17, 1992 | Second-degree burglary |
| 8. | June 22, 1992 | Residential burglary |
| 9. | June 22, 1992 | Residential burglary |

Each of McCraw's prior convictions was for a crime that occurred on a different date. With the exception of the second-degree burglary conviction for which he was sentenced in March 1992, all of the prior convictions were in Spokane County Superior Court.

The genesis of McCraw's conviction for attempted first-degree escape, his current offense, was in June 1992. In that month, he began serving concurrent 69-month sentences for convictions in Spokane County Superior Court for two residential burglaries. Those sentences had been ordered to run concurrently with a 43-month sentence for second-degree burglary that had been imposed by the Lincoln County Superior Court in March 1992. On August 17, 1993, less than four months after he was transferred from McNeil Island Corrections Center to Airway Heights, a minimum security facility near Spokane, McCraw walked away from an offsite work crew assignment. Two days later, McCraw was apprehended in Royal City. He was thereafter charged in Spokane County Superior Court with attempted first-degree escape. McCraw subsequently entered a plea of guilty to that charge.[1]

When McCraw appeared before a judge of the Spokane County Superior Court for sentencing on the attempted first-degree escape charge, the State contended that the sentencing court should count each of McCraw's prior adult felonies as a separate offense in calculating the offender score. The State based its contention on the fact that although McCraw had served some of the sentences for those prior convictions concurrently with other sentences, none of those prior adult offenses encompassed the same criminal conduct and each occurred after 1986.[2] Under the State's reasoning, McCraw's offender score was

---

[1]McCraw was initially charged with first-degree escape. In exchange for McCraw's agreement to enter a plea of guilty, the State amended the charge to attempted first-degree escape. As part of that agreement, McCraw was informed that the prosecutor would recommend a low-end sentence based on the standard range for a defendant with an offender score of 9.

[2]In the case of multiple prior convictions for offenses committed before July 1, 1986, a sentencing court, when computing an offender score, must count as one offense those adult convictions served concurrently. RCW 9.94A.360(6)(c). *See also State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991).

9, the maximum offender score, and the standard sentence range was 47 $^1/_4$ months to 63 months.[3]

McCraw's counsel disagreed with the State and asked the sentencing court to impose an exceptional sentence downward, or, alternatively, to calculate McCraw's offender score by counting as one offense some or all of his nine prior offenses for which the sentences were served concurrently. The sentencing court declined to impose an exceptional sentence. It did, however, accept McCraw's recommendation to consider as one offense some of the prior multiple offenses for which he had served concurrent sentences, concluding that it had the discretion to combine, or not combine, any of McCraw's concurrently served sentences. The sentencing court identified three groups of McCraw's prior multiple convictions for which he served concurrent sentences: two convictions in 1988 (second-degree burglary and third-degree assault); two convictions in 1989 (second-degree burglary and first-degree possession of stolen property); and three convictions in 1992 (second-degree burglary and two counts of residential burglary). For reasons articulated at sentencing, the sentencing judge chose to count each of the above mentioned groups of concurrently served sentences as one offense for purposes of determining McCraw's offender score. This determination was significant because it resulted in an offender score for McCraw of 5 and a standard sentence range for attempted first-degree escape of 16 $^1/_2$ to 21 $^3/_4$ months. The sentencing court imposed a sentence of 21 $^3/_4$ months.

The sole issue presented by this appeal is whether the current sentencing court had the discretion to count as one offense those offenses for which the sentences were served concurrently, but which the original sentencing court did not deem to be the same criminal conduct.

---

[3]*See* RCW 9.94A.310(1). Escape in the first degree is a class B felony within seriousness level IV. RCW 9A.76.110; RCW 9.94A.320. The standard range for an attempted crime is 75 percent of the range for the completed crime. RCW 9.94A.410.

To resolve the issue we must look to RCW 9.94A.360(6), which the parties agree is the pertinent statute. It provides, in relevant part:

> (6) In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:
>
> (a) Prior adult offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. *The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently whether those offenses shall be counted as one offense or as separate offenses,* and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used[.]

(Italics ours.) RCW 9.94A.360(6). It is readily apparent that the first sentence of subsection (a) of this statute has no application here because there was no showing that any of the prior sentencing courts had determined that any of McCraw's offenses encompassed the same criminal conduct.[4] In fact, the Spokane County Superior Court judge who sentenced McCraw for his last three prior convictions specifically found that those offenses did *not* constitute the same criminal conduct. Although the record on appeal does not contain similar findings by any of the other prior sentencing courts, it is unlikely that any of those courts found that the offenses that resulted in those concurrently served sentences encompassed the same criminal conduct because, as noted above, the offenses did not take place on the same day.

■ The second sentence of the statute cited above does

---

[4]RCW 9.94A.400(1)(a) provides, in relevant part: "[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses *encompass the same criminal conduct* then those current offenses shall be counted as one crime. . . . 'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim". (Italics ours.)

bear on the issue at hand. It refers to the duty of a sentencing court to count prior multiple offenses for which sentences were served concurrently as either one offense or separate offenses. In deciding to count some of McCraw's prior offenses together as one offense for sentencing purposes, the sentencing court merely exercised the discretion that the statute requires it to exercise. Despite the State's contention to the contrary, the sentencing court was authorized to exercise its discretion regardless of whether it found that the offenses constituted the same criminal conduct under RCW 9.94A.400(1)(a). Indeed, the sentencing court recognized that "these convictions are probably different criminal conduct". Verbatim Report of Proceedings, at 42.

The sentencing court's exercise of discretion under RCW 9.94A.360(6)(a) was based on and is consistent with the well-reasoned decision of Division Three of the Court of Appeals in *State v. Lara*, 66 Wn. App. 927, 834 P.2d 70 (1992). In *Lara*, the court said:

> RCW 9.94A.360(6)(a) provides that the current sentencing court shall determine whether offenses which were served concurrently shall be counted as "one offense or as separate offenses". The statute does not restrict the current sentencing court to the previous sentencing court's determination or to the application of the same criminal conduct standard imposed pursuant to RCW 9.94A.400(1)(a).

*Lara*, 66 Wn. App. at 931. Indeed, the sentencing court said that it was relying on the *Lara* decision when it calculated McCraw's offender score. In addition, Division One of the Court of Appeals has interpreted RCW 9.94A.360(6)(a) similarly in a more recent but equally well-reasoned decision. *State v. Wright*, 76 Wn. App. 811, 888 P.2d 1214 (1995). In the *Wright* decision, the court said:

> the current sentencing court is not bound by an earlier determination of whether to count the offenses as one offense or separate offenses, nor is it required to find that the offenses constituted the same criminal conduct under RCW 9.94A.400 in order to count them as one offense. . . . [T]he language of

the statute is mandatory, stating that the current sentencing court *shall* determine whether the offenses are to be counted as one offense or separate offenses.

*Wright*, 76 Wn. App. at 829. In *Lara* and *Wright*, the appellate courts remanded for recalculation of the offender score because they believed not only had the sentencing judges failed to exercise discretion pursuant to RCW 9.94A.360(6)(a), these sentencing judges had also indicated that they were not permitted to exercise such discretion.[5]

■ The State argues that we must read the first and second sentences of RCW 9.94A.360(6)(a) together. Reading them in that way, the State asserts, leads to a conclusion that each offense must be counted as a separate offense for purposes of calculating the offender score, unless either the original or current sentencing court made an affirmative finding that the offenses are the same criminal conduct. In support of its argument, the State relies on its interpretation of a portion of the legislative history relating to a 1986 amendment to the Sentencing Reform Act of 1981 that added the second sentence of RCW 9.94A.360(6)(a), which we have set forth above in italics.[6] We find it unnecessary to engage in such statutory construction where, as here, the language of a statute is not ambiguous:

> In judicial interpretation of statutes, the first rule is "the court should assume that the legislature means exactly what it says. Plain words do not require construction". *Snohomish v. Joslin*, 9 Wn. App. 495, 498, 513 P.2d 293 (1973). This court will not construe unambiguous language. *Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 134, 587 P.2d 535 (1978).

---

[5]In an opinion filed after this court heard oral argument, Division Two of the Court of Appeals also analyzed RCW 9.94A.360(6)(a) and reached a result that is consistent with the opinions of Division Three in *Lara* and Division One in *Wright*. *See State v. Reinhart*, 77 Wn. App. 454, 891 P.2d 735 (1995).

[6]The State submits that two documents of legislative history indicate that the Legislature intended to have only two exceptions to the general rule that all prior convictions are to be counted in the offender score, and that those two exceptions were: (1) prior juvenile adjudications, and (2) "multiple prior convictions found to encompass the same criminal conduct". Br. of Appellant, at 11-12 (quoting from the Final Bill Report and the testimony of the Chair of the Sentencing Guidelines Commission to the Senate Judiciary Committee).

*Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 329, 815 P.2d 781 (1991) (quoting *King County v. Taxpayers of King County*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985)).

The State also argues that, even assuming the reasoning articulated in *Lara* and *Wright* is correct, there was an abuse of discretion here because the trial court employed invalid reasons to justify its computation of Mc-Craw's offender score.[7] The State contends that the reasons given by the trial court in this case were similar to the reasons rejected in *State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987) (a trial court's subjective determination that a standard sentencing range is unwise or does not adequately advance the goals of the Sentencing Reform Act of 1981 is not a substantial and compelling reason justifying a departure from the standard range).

The State's reliance upon *Pascal* is misplaced. In *Pascal*, this court reviewed the imposition of a sentence below the standard range. The trial court in this case rejected McCraw's request for an exceptional sentence. Therefore, the inquiry into the reasons for a departure from a standard range sentence has no application to our case.

 The appropriate standard of review of the sentencing court's calculation of an offender score is de novo. *See State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994). As we have observed above, the trial court did not misapply the law, and the decision to count some of McCraw's prior convictions as one offense was within its discretion.

---

[7]Just prior to imposing sentence, the sentencing court said: "[McCraw] is serving a substantial amount of institution time of which he had direct punishment as a result of this offense. I believe that's something the Court can consider. As a result of this, the institution has already penalized him a substantial amount of good time, which I would expect they would do, that he is going to have to serve on his underlying sentence.

" . . . .

"On the other hand, it would be my view [that] an imposition of a sentence of 47 to 63 months to be served consecutively to the current sentence would not further the purposes of the [Sentencing Reform Act of 1981]. . . . [I]t would not, in my view, provide any additional benefit to the community, protection to the community. It would not provide any more accountability because accountability, in my view, isn't just a function of the amount of time". Verbatim Report of Proceedings, at 46-47.

The sole statutorily imposed limitation on the discretion of the current sentencing court is that only multiple offenses for which the defendant served concurrent sentences are eligible to be combined and counted as one offense. As noted, the sentencing court counted as one offense only groups of prior sentences that McCraw had served concurrently. Because the statute provides no other standards restricting the current sentencing court's discretion, and the reasons given by the sentencing court for the exercise of its discretion were not irrational or unreasonable, we affirm the trial court.

DOLLIVER, GUY, JOHNSON, and MADSEN, JJ., and UTTER, J. Pro Tem., concur.

TALMADGE, J. (dissenting) — I dissent. The majority's opinion ignores the unambiguous legislative history of RCW 9.94A.360(6)(a), and adopts a strained analysis resulting in consequences that run completely counter to the specific purposes of the statute. Under the majority's opinion, trial courts will now have unfettered discretion, subject to no standard, to group prior sentences for purposes of scoring criminal histories. The anomalous result will be that offenders may be sentenced for current offenses at a criminal history level *less* than that mandated for their earlier sentences under the Sentencing Reform Act of 1981 (SRA).

## THE STATUTE

RCW 9.94A.360(6) reads, in pertinent part:

> In the case of multiple prior convictions, for the purpose of computing the offender score, *count all convictions separately*, except:
>
> (a) Prior adult offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences

were served concurrently whether those offenses shall be counted as one offense or as separate offenses, and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used;

(b) Juvenile prior convictions entered or sentenced on the same date shall count as one offense, the offense that yields the highest offender score, except for juvenile prior convictions for violent offenses with separate victims, which shall count as separate offenses; and

(c) In the case of multiple prior convictions for offenses committed before July 1, 1986, for the purpose of computing the offender score, count all adult convictions served concurrently as one offense, and count all juvenile convictions entered on the same date as one offense. Use the conviction for the offense that yields the highest offender score.

(Italics mine). The central statutory imperative is to "count all convictions separately", with the exceptions stated in subsections (a), (b), and (c).

The exception under subsection (a), which deals with prior adult convictions, is at issue here. That exception is divided into two classes. The first class, in sentence one of (a), consists of prior adult offenses that a previous sentencing court had determined encompassed the same criminal conduct. RCW 9.94A.400(1)(a). For this exception, the current sentencing court must treat prior offenses as one offense, using the offense that yields the highest offender score.

The second class under (a), sentence two, consists of "other prior adult offenses for which sentences were served concurrently".[8] The meaning of this phrase is the crux of this dispute. The majority reads the phrase "other

---

[8]The statute treats only concurrent sentences because with consecutive sentences there is no opportunity to separate the offender score and count each offense separately. The statute's distinction between concurrent and consecutive sentences tends to weaken the majority's assertion that one purpose of the act is to permit a current sentencing court to regroup prior offenses to calculate a lower offender score. If that were the case, the statute would surely have included consecutive sentences in its purview. Prior concurrent sentences that were not scored give the current sentencing court the opportunity to determine an increased offender score; prior consecutive sentences do not (unless, of course,

prior adult offenses" to mean *all* prior adult offenses except those coming under the first sentence of subsection (a). For these prior adult offenses, the current sentencing court "shall determine . . . whether those offenses shall be counted as one offense or as separate offenses". The majority reads this to mean that for *all* prior adult offenses that are not covered by the first sentence of (a), the current sentencing court shall make a present determination whether the prior adult offenses "shall be counted as one offense or as separate offenses".

Thus, the majority holds that the current sentencing court has absolute discretion to rescore a prior court's offender score determination in any manner it wishes and for any reason it wishes, without regard to the SRA. Other than applying the limitation of sentence two to prior concurrent sentences, "the statute provides no other standards restricting the current sentencing court's discretion". Majority, at 290.[9]

## Problems With the Majority's Reading of the Statute

### 1. The Majority's Reading Creates a Glaring Internal Inconsistency in the Statute

The majority's reading of RCW 9.94A.360 extinguishes the general rule subsection (6) enunciates. That general rule, appearing in the first sentence of subsection (6), is to "count all convictions separately". The exception set forth in subsection (a) for prior adult convictions, however, under the majority's reading, entirely engulfs the general rule.

---

they were part of the "same criminal conduct", and came under sentence one of subsection (a)).

[9]This was the holding of Division Three in *State v. Lara*, 66 Wn. App. 927, 931, 834 P.2d 70 (1992) ("The statute does not restrict the current sentencing court to the previous sentencing court's determination or to the application of the same criminal conduct standard imposed pursuant to RCW 9.94A.400(1)(a)"); and of Division One in *State v. Wright*, 76 Wn. App. 811, 829, 888 P.2d 1214 (1995) ("Thus, the current sentencing court is not bound by an earlier determination of whether to count the offenses as one offense or separate offenses, nor is it required to find that the offenses constituted the same criminal conduct under RCW 9.94A.400 in order to count them as one offense").

Sentence one under subsection (a) concerns prior adult offenses that a previous court had determined encompassed the same criminal conduct. Sentence two, under the majority's interpretation, includes *every other possible prior adult offense.* That is to say, it includes prior adult offenses for which a previous court determined that the criminal conduct was not the same, plus prior adult offenses for which no previous court had made a determination one way or the other. Sentence one and sentence two of subsection (a), as the majority reads them, exhaust all the possibilities. *Nothing is left of the general rule.* The exceptions occupy the entire field.

Such a result is contrary both to our ordinary understanding of how we use language, and to well-established rules of statutory construction. "An exception, like a proviso, operates to restrict the generality of legislative language". *Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 641, 497 P.2d 166 (1972). "Generally an exception is considered as a limitation . . . upon the matter which directly precedes it". *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 457, 536 P.2d 157 (1975) (quoting C. Dallas Sands, *Statutes and Statutory Construction* § 47.11, at 90 (4th ed. 1973)).

While the majority may prefer to confer substantial discretion on trial courts in sentencing, the Legislature intended to limit judicial discretion in the adoption of the SRA. *State v. Barnes,* 117 Wn.2d 701, 711-12, 818 P.2d 1088 (1991). This court cannot, by statutory construction, ignore the direction of the Legislature and the Sentencing Guidelines Commission, and turn the clock back to the time when all prior convictions involving concurrent sentences counted as a single conviction for an offender's criminal history.

### 2. The Consequences of the Majority's Reading Are Anomalous

The majority's reading of the statute does violence to the plain legislative purpose of the 1986 amendments to

the SRA. I think it highly unlikely that in the guise of an exception to an act whose general rule is to "count all convictions separately", the Legislature would give courts unfettered discretion to do precisely the opposite.

As all of the courts writing on this issue concede, the majority's reading gives trial courts complete discretion to calculate the offender's criminal history:

> We recognize that the statute provides no criteria or standards to guide the trial court in making this determination and that it may have to rely on arguments of counsel to decide what is equitable and comports with the purposes of the Sentencing Reform Act of 1981. By remanding, we express no opinion as to how the trial court should exercise its discretion under RCW 9.94A.360(6)(a).

*Wright*, at 829 n.15; see also footnote 9 herein.[10]

I find it even less likely that this purported unfettered discretion is to be exercised in the total absence of statutory guidelines. Under the majority's reading, courts may now calculate offender scores for prior adult convictions without the necessity of following the statutory scheme in the SRA.[11] A reading of subsection (6)(a) that would create for trial courts the opportunity to ignore the SRA only five years after its enactment stands on its head our historical deference to the Legislature in matters affecting criminal punishments. *See State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986).

I cannot conclude, in view of the Legislature's historical role in fixing criminal punishments, that in the fifth year

---

[10]It is not difficult to discern why the Legislature chose not to provide guidance to the trial courts in exercising such alleged discretion. The Legislature *never granted* such discretion to trial courts. The Legislature intended that the "everything counts" rule apply and that any question with respect to the treatment of concurrent or consecutive sentences would be subject to the "all encompassing" rule of RCW 9.94A.400(1)(a).

[11]The stated legislative purpose of the SRA "is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders *which structures*, but does not eliminate, discretionary decisions affecting sentences". (Italics mine.) RCW 9.94A.010.

of the SRA, the Legislature would, *sub silentio*, without debate, without announcement, and without even separately articulating an exception to a specific general rule, convey authority to the courts to calculate offender scores under subsection (6) without statutory constraints of any sort.

In short, the majority's reading creates unlikely and untenable results. To determine the correct reading, resort to statutory construction is necessary.[12]

STATUTORY CONSTRUCTION ANALYSIS

1. Principles of Statutory Construction

Statutory interpretation discerns the intent of the Legislature and furthers the legislative purpose in enacting the statute. *State v. McGee*, 122 Wn.2d 783, 864 P.2d 912 (1993); *State v. Rinkes*, 49 Wn.2d 664, 306 P.2d 205 (1957). In ascertaining legislative intent, we must look to the sequence of all statutes relating to the same subject matter. *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 150, 736 P.2d 265 (1987). We presume the Legislature is aware of its prior enactments and judicial construction of them. *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984). We also presume that the Legislature does not engage in meaningless or unnecessary acts. *State v. Wanrow*, 88 Wn.2d 221, 228, 559 P.2d 548 (1977). Thus, when the Legislature amends an unambiguous law, we presume that the Legislature *intended to change the law. State v. Standifer*, 110 Wn.2d 90, 94, 750 P.2d 258 (1988).

Ultimately, this court must look to the purpose or policy goals of the Legislature to effectuate its intent and to avoid absurd results. *State v. McDougal*, 120 Wn.2d 334, 350,

---

[12]The majority asserts that its reading of the second sentence of subsection (6)(a) is the only possible interpretation, and declines to employ the customary tools of statutory construction: "We find it unnecessary to engage in such statutory construction where, as here, the language of a statute is not ambiguous". Majority, at 288. I believe the majority's reading is incorrect, based on the legislative history of the statute, the policy adopted by the Legislature, and the practical consequences of the majority's interpretation.

841 P.2d 1232 (1992). The purpose or policy of the enactment should prevail even over express, but inept, wording. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). "Statutes cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes, or in the known temper of legislative opinion". Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 539 (1947). In the words of Chancellor Kent:

> "In the exposition of a statute the intention of the lawmaker will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context; from the occasion and necessity of the law; from the mischief felt and the remedy in view; and the intention should be taken or presumed according to what is consistent with reason and good discretion."

2A Norman J. Singer, *Statutes and Statutory Construction* § 46.05, at 105 (5th ed. 1992) (quoting *Kent's Commentaries* 462 (13th ed. 1884)).

### 2. Legislative History of RCW 9.94A.360(6)

Before the 1986 amendments to the SRA incorporated in RCW 9.94A.360(6), all offenses served concurrently counted as one offense in calculating the criminal history portion of an offender score. Laws of 1983, ch. 115, § 7; Laws of 1984, ch. 209, § 19. Also before 1986, the Legislature attempted to deal with the question of crimes arising out of the same criminal conduct. In 1984, the Legislature adopted the so-called "encompassing rule". In Laws of 1984, ch. 209, § 25, the Legislature stated: "Separate crimes encompassing the same criminal conduct shall be counted as one crime in determining criminal history".

In 1986, however, at the request of the Sentencing Guidelines Commission, the Legislature changed the methodology for calculating criminal history. For purposes of calculating an offender's criminal history, the Sentencing Guidelines Commission recommended adoption of the "everything counts" rule as the general policy for sentenc-

ing and a clearer definition of the "encompassing" rule. The 1986 Legislature agreed with the Commission and enacted Substitute House Bill 1399, codified as RCW 9.94A.360(5), which set forth the "everything counts" rule: "In the case of multiple prior convictions, for the purpose of computing the offender score, *count all convictions separately* . . .". (Italics mine). Thus, for purposes of calculating an offender's criminal history, all offenses counted *as separate offenses*, with limited exceptions.

For purposes of the exception in RCW 9.94A.360(6)(a), the Legislature referenced RCW 9.94A.400(1)(a). By enacting Laws of 1986, ch. 257, § 28, the 1986 Legislature amended the 1984 version of that statute and made even clearer the workings of the "encompassing" rule:

> Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(e) or any other provision of RCW 9.94A.390.

The Legislature's final bill report on Substitute House Bill 1399 confirms this analysis of legislative intent:

> Several changes are made to the process of counting prior offenses as part of determining the "offender score". *With two exceptions, all prior felonies, even those for which sentences were served concurrently, are counted separately.* Multiple prior convictions found to encompass the same conduct are counted as one prior conviction. Multiple prior juvenile convictions for which sentences ran concurrently continue to be counted as one prior conviction.

(Italics mine). Further, Donna Schram, the Chair of the Sentencing Guidelines Commission, testified before the Senate Judiciary Committee on February 19, 1986, and

provided written materials for that committee's deliberations. She stated that Substitute House Bill 1399 changed the treatment of prior convictions in calculating criminal history:

> Include in the offender score all prior convictions for crimes committed after July 1, 1986; (exceptions: multiple prior convictions found to encompass the same criminal conduct and multiple prior juvenile adjudications entered or sentenced on the same date).

Neither in the Legislature's bill report nor in Ms. Schram's testimony is it possible to detect a *third exception* to the "everything counts" rule. The majority's opinion ignores this entire legislative history and reads a further exception to the "everything counts" rule into the statute by treating the second sentence of RCW 9.94A.360(6)(a) as an additional exception, where an exception was not created. Indeed, the exception now created by the majority does not even appear in a separately articulated subsection of subsection (6) of RCW 9.94A.360.

In adopting SHB 1399, the Legislature intended to change the law regarding calculation of criminal history in cases of multiple prior convictions.[13] Each offense, regardless of whether the sentences were served consecutively or concurrently, is counted as a separate offense. RCW 9.94A.360(6). An exception is created for juvenile offenses. RCW 9.94A.360(6)(b). A further exception is created for prior adult offenses which encompassed the same criminal conduct, as defined in RCW 9.94A.400(1)(a). RCW 9.94A.360(6)(a). Where the former sentencing court had not addressed the issue of whether the offenses encompassed the same criminal conduct within the meaning of RCW 9.94A.400(1)(a), but sentences were served concurrently, the second sentence of RCW 9.94A.360(6)(a) allowed the current sentencing court to make such a determination.

---

[13]The intent to change is made clear by the Legislature's express adoption of its old rule for criminal history for prior adult and juvenile convictions for offenses committed prior to July 1, 1986. RCW 9.94A.360(6)(c).

CONCLUSION

A more natural and less strained reading of the statute that comports with its context and with the legislative history of the SRA is possible if one allows the first phrase of the first sentence to modify the second sentence of subsection (6)(a). That is, where the first sentence refers to prior adult offenses that were scored under RCW 9.94A .400(1)(a), sentence two, in referring to "other adult offenses", means simply those "other adult offenses" that were *not* scored under RCW 9.94A.400(1)(a). In context, this reading makes perfect sense and totally avoids the troubles the majority opinion creates.

This reading preserves the internal consistency of subsection (6) because it provides for a true limitation of the general rule, one which does not engulf the general rule. This reading is in keeping with the legislative intent to provide for higher offender scores by counting offenses separately, and does not create the anomalous result of giving trial courts the discretion to score offenses without reference to the SRA. In every respect, it is the more reasonable interpretation of the subsection (6)(a).

"[I]f an act is subject to two interpretations, that which best advances the legislative purpose should be adopted". *In re R.*, 97 Wn.2d 182, 187, 641 P.2d 704 (1982). "Where the manifest object of a statute can be ascertained and the statute is susceptible of two constructions, that construction should be given which will carry out the intent of the legislature". *Anderson v. O'Brien*, 84 Wn.2d 64, 67, 524 P.2d 390 (1974). In this case, the majority can point to no hint of legislative purpose to give trial courts the discretion to calculate offender scores without reference to the SRA. The analysis set forth above is a more reasonable interpretation of RCW 9.94A.360(6).

I would reverse the sentence of the trial court and remand for resentencing consistent with this opinion. I would overrule *State v. Lara*, 66 Wn. App. 927, 834 P.2d 70 (1992) and *State v. Wright*, 76 Wn. App. 811, 888 P.2d 1214 (1995), to the extent they are inconsistent.

SMITH, J., concurs with TALMADGE, J.

DURHAM, C.J. (concurring in dissent) — It is axiomatic that ascertaining legislative intent, and giving it effect, are the twin goals of judicial interpretation of statutes. I am persuaded the dissent accurately articulates what the Legislature meant by RCW 9.94A.360(6)(a), while the majority ignores legislative intent altogether. I write separately to suggest that since the statutory language at issue here is, at the very least, ambiguous, it is subject to construction.

The majority pretends it is helpless before an unambiguous sentence in the statute, and so is powerless even to look at the legislative history and intent of the section here at issue. However, the contention that the provision is wholly unambiguous, majority, at 288, is both mistaken and contrary to this court's prior holdings.

I agree with the majority's initial premise. If a legislative statement is unambiguous, this court should not attempt to go beyond the Legislature's language in order to discern what might have been intended. Here, though, the statutory provision is anything but unambiguous. Hence, it is subject to the ordinary methods of statutory construction.

RCW 9.94A.360(6)(a) embodies at least two obvious facial ambiguities. The first is an ambiguity created by context. RCW 9.94A.360(6) includes three exceptions to the general rule that all prior convictions are to be counted separately. Section .360(6)(a) creates an exception for offenses which encompassed the same criminal conduct; section.360(6)(b) creates an exception for juvenile prior convictions entered or sentenced on the same date; and section.360(6)(c) creates an exception for adult convictions served concurrently before July 1, 1986.

The majority contends that RCW 9.94A.360(6)(a) also contains a completely different and much more expansive exception to the general rule of counting all prior convictions separately. Not only does it contain an exception for

"same criminal conduct" offenses, but, according to the majority, it gives the sentencing court virtually unrestricted discretion to group prior concurrent sentences as it pleases. Even the majority admits the consequence of its interpretation of this stealth exception for prior concurrent sentences: "the statute provides no other standards restricting the current sentencing court's discretion". Majority, at 290. As the dissent points out, it would be anomalous indeed for the Legislature specifically to enumerate three exceptions and then tuck a blanket exception for prior concurrent sentences into a section dealing with a different topic. That anomaly alone constitutes a facial ambiguity. Dissent, at 292-95.

Moreover, even if one *grants* the majority's interpretation of that anomaly, it only gives rise to a further ambiguity. If the majority's interpretation of section.360(6)(a) is correct, then section.360(6)(c) would be superfluous, since it would be wholly subsumed into the exception (6)(a) allegedly creates for concurrent sentences. There is no point to having a special rule for multiple prior convictions for offenses committed prior to July 1, 1986, if all such offenses are subsumed into the more general rule allegedly hidden in (6)(a). *Compare* RCW 9.94A.360(6)(c) *with* RCW 9.94A.360(a). Furthermore, the majority's interpretation conflicts with our recent decision in *In re Sietz*, 124 Wn.2d 645, 651, 880 P.2d 34 (1994) ("In drafting RCW 9.94A.360, the Legislature decided to treat multiple prior convictions committed pre-July 1, 1986, differently than those committed post-July 1, 1986".).

Since the relevant grammatical sentence is unambiguous on its face, the majority suggests, any statutory construction is precluded. Majority, at 288-89. However, it makes little sense to pretend ambiguity resides only in individual sentences. Ambiguity is a function also of context. Even plain sentences, if ambiguously related to an ambiguous context, create ambiguity.

The second facial ambiguity occurs within the very sentence the majority claims to be wholly free from ambi-

guity. This court has explicitly held that the phrase "adult convictions served concurrently", RCW 9.94A.360(6)(c), is ambiguous on its face. *Sietz*, 124 Wn.2d at 649; *accord Sietz*, at 655 (Durham, J., dissenting, but agreeing that "[t]he very ambiguity of the term 'concurrent' precipitated this case"). See also *State v. Roberts*, 117 Wn.2d 576, 817 P.2d 855 (1991). Ironically, the same phrase we have held to be ambiguous on its face occurs in the middle of the crucial sentence the majority alleges to be wholly unambiguous. See majority, at 286.

The majority glosses over the clear legislative intent animating this statute — a legislative intent manifestly at odds with the majority's interpretation — by pretending it embodies no ambiguity whatever. I think there is sufficient ambiguity to warrant resorting to legislative intent and history. Once one does so, the majority's interpretation unravels, as the dissent demonstrates.