IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Receivership of ELCON CORPORATION, | No. 86189-1-I |
| | DIVISION ONE |
| KEYBANK, N.A., | PUBLISHED OPINION |
| Plaintiff, | |
| v. | |
| ELCON CORPORATION, | |
| Petitioner, | |
| and | |
| THE STAPLETON GROUP, INC., | |
| Respondent. | |

HAZELRIGG, C.J. — On discretionary review, Elcon Corporation petitions from the order of the superior court compelling it to turn over all of its e-mails in its possession or control to the Stapleton Group Inc., the general receiver appointed to manage Elcon's receivership estate. Elcon asserts that the court erred when it so ordered because Stapleton did not have authority to demand that Elcon turn over its e-mails containing attorney-client privileged information. Because Elcon's e-mail accounts were included as property within the receivership estate, our legislature granted general receivers the "power to *assert any rights*" over property

in the receivership estate,[1] and the attorney-client privilege is effectively a legal right, Stapleton had authority to demand the turn-over of Elcon's e-mails, including those containing attorney-client privileged information. Accordingly, the superior court did not err when it issued the order challenged on discretionary review, and we affirm.

FACTS

Elcon Corporation is an electrical contractor formed and licensed in Washington. Prior to August 2023, Elcon had agreed to provide electrical contracting services for bonded public works projects and contracted with two surety companies, Markel Insurance Company and Traveler's Casualty and Surety Company of America, who issued bonds guaranteeing Elcon's obligations under those construction agreements. Elcon received funds in accordance with those construction agreements and began work on multiple bonded projects.

During this time, Elcon signed an agreement with KeyBank N.A. to receive a loan of several million dollars in exchange for granting KeyBank a security interest in Elcon's "Collateral," as described in a commercial security agreement between the parties. Elcon's "Collateral" described a broad range of its property, including

> [a]ll inventory, equipment, *accounts* (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, *documents*, . . . *all records and data* and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media.

---

[1] *See* RCW 7.60.060.

- 2 -

(Emphasis added.) Neither party disputes that included among the "Collateral" was Elcon's e-mail accounts.

On August 11, 2023, KeyBank filed a petition in King County Superior Court arguing its security interest in Elcon's "Collateral" required protection, that several independent statutory bases justified the appointment of a general receiver to protect its security interest, and the Stapleton Group should be appointed as the general receiver over the "Collateral." KeyBank's petition identified the "Collateral" as constituting Elcon's property set forth in the commercial security agreement between KeyBank and Elcon.

The court granted KeyBank's motion the following month and appointed Stapleton as the general receiver over Elcon's "Collateral" as described in the commercial security agreement.[2] The court found, in pertinent part, as follows:

> 10. As of July 17, 2023, KeyBank is the senior secured KeyBank [sic] to Defendant Elcon under that certain line of credit loan (the "LOC Loan") and holds a secured claim in the total amount of $7,077,680.56 (the "KeyBank Secured Claim"). . . .
> 11. Pursuant to that certain Commercial Security Agreement, dated April 30, 2019, (the "KeyBank Senior Security Agreement"), the KeyBank Secured Claim is secured by a security interest (the "KeyBank Lien") *in substantially all of the existing and future acquired assets of Defendant Elcon (the "Assets" or "KeyBank Collateral", which defined terms, as used herein, specifically exclude any and all remaining contract balances on Travelers Bonded Projects and Markel Bonded Projects).*

(Emphasis added) (formatting omitted.) The court also found that Elcon had defaulted on its loan obligations to KeyBank; Elcon and KeyBank had agreed to appoint a receiver in the event of such a default; Elcon was insolvent, underfunded,

---

[2] The court's receivership appointment order also excluded from the receivership estate the remaining contract balances on Elcon's bonded projects.

- 3 -

and in significant debt to other creditors; Elcon was diverting, and had diverted $2.6 million of, its "Cash Collateral" from its KeyBank account to another account with a different bank; and the "immediate appointment of a general receiver [wa]s necessary to protect and preserve the Collateral."

The court's appointment order also set forth the following:

> 1. Appointment. *Stapleton is hereby appointed a general receiver (the "Receiver") for Defendant Elcon and to take charge over all of Defendant Elcon's Assets*[3] *wherever located and conduct an orderly liquidation of the Assets*. During the receivership, and until further order of the [c]ourt, the *Assets* shall remain under this [c]ourt's exclusive jurisdiction in accordance with RCW 7.60.055. The Receiver shall not be subject to the control of any of the parties to this matter but shall be subject only to the [c]ourt's direction in the fulfillment of the Receiver's duties. . . .
> . . . .
> 3. Authority of the Receiver. *Unless and until otherwise ordered by the* [*c*]*ourt, the Receiver shall be a general receiver, with exclusive possession and control over the Assets*, *with the power, rights, and authority vested in it by RCW 7.60.060,* including but not limited to *authority and control over all of Defendant Elcon's accounts* (including, without limitation, bank accounts).[4] In addition,
> > a. *The Receiver is authorized to liquidate the Assets and/or wind up Defendant Elcon's affairs*, pursuant to RCW 7.60.260.

(Emphasis added.)[5]

On December 20, Stapleton filed a motion to compel Elcon to turn over all of its e-mails in its possession or control to Stapleton. In its motion, Stapleton stated that the court's receiver order granted it "authority and control over all of Defendant Elcon's accounts" and argued that Elcon's e-mail accounts, and

---

[3] The court's order used the capitalized terms "Assets" and "Collateral" interchangeably.

[4] We note that although the trial court's appointment order expressly referenced RCW 7.60.060 in discussing Stapleton's authority, such reference does not impact whether such statutory authority is granted to a receiver. Rather, according to the plain language of RCW 7.60.060, discussed *infra*, the statutory authority attaches upon the receiver's appointment.

[5] Elcon did not challenge this order. Therefore, the findings therein are verities on review. *In re Receivership of Applied Restoration*, 28 Wn. App. 2d 881, 901, 539 P.3d 837 (2023).

- 4 -

therefore its e-mails, were included among those accounts over which it had authority. Stapleton further asserted that Elcon had a duty to turn over such e-mails and, through its legal counsel and principals, it had refused to produce such e-mails "primarily on the basis that some of the Elcon E[-]mails contain attorney-client privileged material."

The court granted Stapleton's motion to compel.[6] The order read, in pertinent part, as follows:

> Within three (3) judicial days after issuance of this Order, Elcon Corporation ("Elcon"), its employees, principals, agents, and their counsel . . . are ORDERED to provide the Receiver with:
> a. any and all back-up copies of Elcon E[-]mails retrieved from Elcon's cloudbased e[-]mail server in their possession or control; and
> b all permissions or credentials necessary to access Elcon's cloud-based e[-]mail system.

The court also ordered Stapleton to adhere to certain restrictions regarding the Elcon e-mails, including limiting Stapleton's review, use, or disclosure of "post-appointment privileged e[-]mails" and "personal attorney e[-]mails," expressly prohibiting it from disclosing "any privileged e[-]mails to KeyBank or other third parties absent a court order," and specifically directing its compliance with laws and regulations regarding "sensitive personal information" of employees. (Some capitalization omitted.)

---

[6] Elcon also filed a motion for a protective order, raising similar legal issues, which the trial court later denied. Elcon has designated for our review the court's order denying its protective order motion.

Our resolution of the merits of the court's order granting Stapleton's motion to compel necessarily also resolves the merits of the court's order of denial on the motion for a protective order.

Elcon timely filed a motion for discretionary review, which was granted by a commissioner of this court.

ANALYSIS

I.     Standard of Review

We review receivership orders for abuse of discretion.  *In re Receivership of Castle Walls, LLC*, 30 Wn. App. 2d 526, 533, 545 P.3d 816, *review denied*, 3 Wn.3d 1015 (2024).  An abuse of discretion "occurs when a decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"  *In re Receivership of Applied Restoration, Inc.*, 28 Wn. App. 2d 881, 891, 539 P.3d 837 (2023) (internal quotation marks omitted) (quoting *MONY Life Ins. Co. v. Cissne Fam., LLC,* 135 Wn. App. 948, 952-53, 148 P.3d 1065 (2006)), *review denied,* 3 Wn.3d 1012 (2024).

"A trial court bases its decision on untenable grounds or untenable reasons if it relies on unsupported facts or *applies the wrong legal standard*."  *PowerCom, Inc. v. Valley Elec. Co. of Mt. Vernon, Inc.*, 29 Wn. App. 2d 506, 511-12, 540 P.3d 1181 (emphasis added), *review denied*, 2 Wn.3d 1035 (2024).  As discussed, *infra*, the question at the center of this matter is one of statutory interpretation, which is a question of law that we review de novo.  *Wash. State Nurses Ass'n v. MultiCare Health Sys.*, 28 Wn. App. 2d 288, 295, 535 P.3d 480 (2023), *review denied*, 2 Wn.3d 1023 (2024).

II.    General Receiver's Authority over Receivership Estate's Attorney-Client Privileged Information

Elcon contends that the legislature did not intend to grant to a general receiver, such as Stapleton in this case, authority over a receivership entity's attorney-client privileged information.  We disagree.

A.    Principles of Statutory Interpretation

Stapleton properly identifies in its response brief that "[i]n judicial interpretation of statutes, the first rule is 'the court should assume that the legislature means exactly what it says.'" *City of Kent v. Jenkins*, 99 Wn. App. 287, 290, 992 P.2d 1045 (2000) (internal quotation marks omitted) (quoting *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995)).  We have described the process of statutory interpretation as follows:

> "The primary goal of statutory construction is to carry out legislative intent." [*Cockle v. Dep't of Lab. & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001).]  The best evidence of the legislature's intent is the statute's language.  *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011).  When "the statute's meaning is plain on its face, then the court must give effect to the plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).  A statute's plain meaning is to be discerned from the ordinary meaning of the language under scrutiny, in addition to the context of the statute in which the language is found, related provisions, and the statutory scheme as a whole.  *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

*Abacus Fine Carpentry, LLC v. Wilson*, 16 Wn. App. 2d 112, 116, 480 P.3d 433 (2021).  Additionally, "[t]erms that are not defined by the statute in question must be accorded their plain and ordinary meaning unless a contrary intent appears." *Perkins Coie v. Williams*, 84 Wn. App. 733, 736-37, 929 P.2d 1215 (1997).

In the event of "a familiar legal term in a statute," we assign it "its familiar legal meaning." *State v. StarKist Co.*, 25 Wn. App. 2d 83, 94, 522 P.3d 594, *review denied,* 1 Wn.3d 1011 (2023).

We also note that where the word "all" was not specifically defined in a statute, we have given it the plain and ordinary meaning of "'[b]eing or representing the entire or total number, amount, or quantity.'" *Perkins Coie*, 84 Wn. App. at 736-37 (alteration in original) (quoting AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 47 (3d ed. 1992)). Similarly, our Supreme Court has repeatedly instructed that the word "any," when used in a statute, "means 'every' and 'all.'" *State v. Westling*, 145 Wn.2d 607, 611, 40 P.3d 669 (2002) (quoting *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991)). Lastly, "[w]e will not add words to a statute where the legislature has chosen not to include them." *StarKist Co.*, 25 Wn. App. 2d. at 92.

B.     Statutory Interpretation of RCW 7.60.060

Our legislature set forth certain powers and duties of a receiver at RCW 7.60.060, which provides, in relevant part, as follows:

> (1) *A receiver has the following powers* and authority in addition to those specifically conferred by this chapter or otherwise by statute, court rule, or court order:
> . . . .
> (c) *The power to assert any rights*, claims, or choses in action *of the person over whose property the receiver is appointed relating thereto*.

(Emphasis added.)[7]

---

[7] Elcon does not meaningfully engage with this statutory provision, and Stapleton does not rely on the cited subsection in its briefing but, rather, passingly relies on other sections and subsections, discussed further in Section II.B, *infra*.

Although the statute does not define the word "rights," that word is a familiar legal term, with *Black's Law Dictionary* defining a "right" as "a *power, privilege, or immunity* secured to a person by law." BLACK'S LAW DICTIONARY 1584 (12th ed. 2024) (emphasis added). Furthermore, although the statute does not define the term "any," we have, as set forth herein, defined it as "'[b]eing or representing the entire or total number, amount, or quantity.'" *Perkins Coie*, 84 Wn. App. at 737 (alteration in original) (quoting AM. HERITAGE DICTIONARY, *supra,* at 47). Therefore, the legislature intended for a general receiver to have authority over the "entire or total number, amount, or quantity" of "rights . . . of the person over whose property the receiver is appointed relating thereto." RCW 7.60.060(1)(c).

The statutory provision, for its part, does not contain the phrase "attorney-client privilege." However, *Black's* defines "attorney-client privilege" as "[t]he client's *right* to refuse to disclose and to prevent any other person from disclosing confidential communications between the client and the attorney." BLACK'S, *supra*, at 1451 (emphasis added). More generally, a "privilege" is defined as,

> *A special legal right, exemption, or immunity* granted to a person or class of persons; an exception to a duty. • A privilege grants someone the *legal freedom* to do or not to do a given act. It immunizes conduct that, under ordinary circumstances, would subject the actor to liability.

*Id.* at 1450-51 (emphasis added). Furthermore, a "right," as described herein, includes a "privilege." *Id.* at 1584. Therefore, the attorney-client privilege is, in essence, a legal right. Taken together, it logically follows that by granting a receiver *any rights* over the property in a receivership estate, the legislature

- 9 -

necessarily intended to grant to the receiver authority over attorney-client privileged information in the receivership estate.[8]

We note that the foregoing analysis is also consistent with effectuating the legislature's grant of additional authority to a receiver. For instance, another subsection of RCW 7.60.060 grants a receiver the power and authority,

> [i]f the appointment applies to all or substantially all of the property of an operating business or any revenue-producing property of any person, to do all things which the owner of the business or property might do in the ordinary course of the operation of the business as a going concern or use of the property including, but not limited to, the purchase and sale of goods or services in the ordinary course of such business, and the incurring and payment of expenses of the business or property in the ordinary course.

RCW 7.60.060(1)(b). Similarly, RCW 7.60.060(1)(c) identifies a receiver's power to investigate, pursue, and defend claims on behalf of the person whose property is in the receivership estate. This broad range of anticipated conduct by a receiver plainly requires that the receiver have access to attorney-client privileged information.[9]

Thus, when the court appointed Stapleton as a general receiver over Elcon's receivership estate pursuant to chapter 7.60 RCW, the court necessarily

---

[8] Elcon asserts that the legislature implicitly intended to exempt the attorney-client privilege from the authority granted to a receiver. However, this would require adding language to the statutory provision specifically exempting one legal right from its purview. We decline to add such language thereto. *See StarKist Co.*, 25 Wn. App. 2d at 92.

[9] This analysis parallels the reasoning in the United States Supreme Court's decision in *Commodity Futures Trading Commission v. Weintraub*, wherein the Court held that the bankruptcy trustee controlled the attorney-client privilege of the bankruptcy estate of a debtor corporation. 471 U.S. 343 (1985). This was so, according to the Court, "[b]ecause the attorney-client privilege is controlled, outside of bankruptcy, by a corporation's management, the actor whose duties most closely resemble those of management should control the privilege in bankruptcy" and the Federal Bankruptcy Code not only granted the bankruptcy trustee extensive managerial authority over the bankruptcy estate, but also "severely limited" the "powers of the debtor's directors." *Id.* at 351-52; *see also id.* at 351-53 (comparing managerial powers and duties of a bankruptcy trustee with the limited authority of a debtor corporation's directors). The statutory framework set forth in chapter 7.60 RCW functions similarly. *See* RCW 7.60.060(1)(a)-(j), .070, .080, .160, .180, .210, .260.

granted Stapleton authority over any of Elcon's rights pertaining to the estate, including over attorney-client privileged information contained within. Therefore, the trial court did not apply an incorrect legal standard when it issued its order granting Stapleton's motion to compel.

C.      Trial Court's Exercise of Discretion in Granting Motion to Compel

As a final matter, we note that the trial court properly exercised its discretion in granting Stapleton's motion to compel. As explained, the court granted Stapleton's motion to compel Elcon to turn over the e-mails in its possession or control to Stapleton while simultaneously ordering Stapleton to comply with certain restrictions regarding those e-mails. The restrictions included limiting its review, use, or disclosure of "post-appointment privileged e[-]mails" and "personal attorney e[-]mails," prohibiting it from disclosing "any privileged e[-]mails to KeyBank or other third parties absent a court order," and requiring compliance with laws and regulations regarding "sensitive personal information" of Elcon's employees. (Some capitalization omitted.)

The order reflects that the court carefully balanced the receiver's statutory interest in and rights over the property in the receivership estate with Elcon and its principals' interest in the postappointment and personal attorney e-mails that did not form part of the receivership estate. This, in turn, reflects a proper sensitivity to protecting the attorney-client privilege while also carrying out the mandate of our legislature. The trial court properly exercised its discretion in so doing and, thus,

did not err when it granted Stapleton's motion to compel. Elcon does not establish

an entitlement to appellate relief.[10]

Affirmed.

WE CONCUR:

Díaz, J.

, ACJ

---

[10] Elcon also asserts that Stapleton was required to obtain Elcon's waiver of its attorney-client privilege or establish a "substantial need" for the attorney-client privileged information. However, these assertions are predicated on a misunderstanding of the implications of appointing a receiver over property in a receivership estate analyzed herein; a receiver who is granted rights over property akin to an owner need not establish a waiver or exception in order to view attorney-client privileged information pertaining to the property in question.