**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 70711-6-I |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| ANDREA MARIE RICH, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 23, 2015 |
| | ) | |

Dwyer, J. — A jury found Andrea Rich not guilty of possession of a stolen

vehicle but guilty of driving under the influence and reckless endangerment. Rich

appeals, alleging various forms of trial court error and prosecutorial misconduct

and asserting that insufficient evidence was adduced to support her reckless

endangerment conviction. Because the State failed to prove beyond a

reasonable doubt that Rich recklessly engaged in conduct that created a

substantial risk of death or serious injury to another person, the reckless

endangerment conviction must be vacated. In all other respects, the judgment is

affirmed.

I

One evening in May 2012, Yared Metafaria stopped by a friend's

restaurant in Seattle to play pool. He parked his car, an Acura MDX, with the

back window partially open and inadvertently left a set of keys inside the car.

When Metafaria left the restaurant a few hours later, the car was gone. He called the police and reported that his car had been stolen.

About a week later, at approximately 8:00 p.m. on May 27, 2012, Deputy Paul Mulligan of the King County Sheriff's Office was on patrol in Burien. Deputy Mulligan learned that the stolen Acura had been spotted in the vicinity and was "on the lookout" for it as he drove. He then saw the Acura pass him in the adjacent lane. The deputy was traveling with the "flow of traffic" at "about 35" miles per hour when the Acura passed his vehicle. He pulled his patrol car into the Acura's lane of travel and sped up to "about 50" miles per hour in order to catch up to the Acura. Deputy Mulligan followed the car for four blocks, whereupon it pulled into the parking lot of an apartment complex. After the driver of the Acura parked, Deputy Mulligan turned on his emergency lights and pulled in behind the Acura.

The Acura's operator opened the car door. Deputy Mulligan got out of his car, but waited for backup before approaching the Acura. He heard the female driver, later identified as Andrea Rich, say in a "loud voice" to the passenger, "tell them we just found the keys and we just got in the car." The deputy could not see the passenger, whom police officers later described as a seven to nine-year-old boy. After a second police officer arrived, Deputy Mulligan arrested Rich.

The officers who interacted with Rich at the time of her arrest noticed a strong odor of alcohol and observed signs of intoxication, including bloodshot, watery eyes and slurred speech. Because Rich was wearing a leg brace, police officers did not administer field sobriety tests. Breath alcohol tests, administered

at a police station approximately an hour after Rich's arrest, revealed alcohol concentration levels of .183 and .188.

Rich admitted to police officers that she had consumed one shot of alcohol. She also said the Acura belonged to her boyfriend, Mohamed, who had given her the keys. Rich could not provide a last name, or any other information, about Mohamed. Rich first denied having been in a stolen car, then said she did not know the car was stolen, and finally said it was somehow the child's fault.

The State initially charged Rich with a gross misdemeanor, driving under the influence (DUI), and a felony, possession of a stolen vehicle. The State later amended the information to add a second gross misdemeanor charge of reckless endangerment.

At trial, Rich testified that she was just getting into the car when the police officer pulled up behind her. She said her nephew had brought the keys to her just before the police arrived. Rich testified that she had consumed one or two shots of alcohol, but claimed she was not affected by the alcohol she had consumed. Rich maintained that Metafaria was a man whom she knew as Mohamed, and related a confusing account of how she met him and how he left his car in her possession. Rich claimed that she was waiting for Mohamed to pick up the car when the police arrested her. Rich further testified that she had arranged for Mohamed to pick up the car by telephone calls and text messages, but that she no longer possessed the cell phone she had used to communicate with him.

Metafaria, on the other hand, testified that he did not know Rich.

3

The jury found Rich guilty of DUI and reckless endangerment but acquitted her of possession of a stolen vehicle. By special verdict, the jury found that Rich's alcohol concentration level was "0.15 or higher within two hours after driving." Rich appeals.

II

Rich contends that the State failed to prove the elements of reckless endangerment. The reckless endangerment statute, RCW 9A.36.050, provides as follows:

> (1) A person is guilty of reckless endangerment when he or she recklessly engages in conduct not amounting to drive-by shooting but that creates a substantial risk of death or serious physical injury to another person.
>
> (2) Reckless endangerment is a gross misdemeanor.

Another provision in the criminal code, RCW 9A.08.010, defines levels of culpability, including recklessness. RCW 9A.08.010 provides, in relevant part:

> (c) RECKLESSNESS. A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

In accordance with these statutes, the trial court provided the following unchallenged instructions to the jury:

> A person commits the crime of reckless endangerment when he or she recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person.

Instruction 16.

> To convict the defendant of the crime of reckless endangerment, each of the following elements of the crime must be proved beyond a reasonable doubt:

4

(1) That on or about May 27, 2012, the defendant acted recklessly;

(2) That such reckless conduct created a substantial risk of death or serious physical injury to another person; and

(3) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Instruction 17.

This instruction applies to the crime of reckless endangerment.

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that death or serious physical injury may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

When recklessness as to a particular fact or result is required to establish an element of a crime, the element is also established if a person acts intentionally or knowingly as to that fact or result.

Instruction 18.

Physical injury means physical pain or injury, illness, or an impairment of physical condition.

Instruction 19.

The trial court also instructed the jury:

A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

Instruction 11.

When reviewing a sufficiency of the evidence challenge, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt*.'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

"The purpose of this standard of review is to ensure that the trial court fact finder 'rationally appl[ied]' the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt." State v. Rattana Keo Phuong, 174 Wn. App. 494, 502, 299 P.3d 37 (2013) (alteration in original) (quoting Jackson, 443 U.S. at 317-18). The standard of review is also designed to ensure that the fact finder at trial reached the "subjective state of near certitude of the guilt of the accused," as required by the Fourteenth Amendment's proof beyond a reasonable doubt standard. Jackson, 443 U.S. at 315.

Thus, as instructed, the State was required to establish beyond a reasonable doubt that Rich (1) acted recklessly, in other words, that she knew of and disregarded a substantial risk of death or serious physical injury, (2) that her conduct was endangering because it created a substantial risk of death or serious injury, and (3) that she endangered another. Rich concedes that her

6

conviction was premised on the conduct of driving. She argues that the State failed to prove that her driving created a substantial risk of death or serious physical injury to another.

At trial, the State advanced the theory that Rich committed reckless endangerment because she "drove a stolen car while she was drunk, with a little kid in the front seat." The State relied on evidence that Rich drove the Acura while intoxicated to establish that she acted recklessly and that her conduct endangered another.

> So, let's look at what evidence supports that she was acting recklessly on May 27th. We already talked about the fact that the defendant was driving drunk. She is driving drunk in a stolen car. She is driving drunk in a stolen car with the little boy in the front passenger seat.
>
> Now, as we talked about during voir dire, we have a high risk of accident when people are driving drunk, and that people can be injured or physically seriously injured if you are in a car accident. That is what you are here to decide. What would a reasonable person do? A reasonable person would not drive drunk. A reasonable person wouldn't drive a stolen car. A reasonable person certainly wouldn't drive drunk in a stolen car with a little kid in the front seat. This kid is only seven or eight years old.
>
> So, this is a gross deviation of conduct of what a reasonable person would do. This is recklessness. And this reckless conduct creates a substantial risk of death or physical injury.
>
> Driving drunk in a stolen car, the defendant put herself and that little boy in a chance of having an accident. And by being in the front passenger seat, he is in more danger than in the backseat where he is supposed to be. She put that child at substantial risk of death or serious injury.
>
> She is also putting other people driving on Ambaum that night along the sidewalk at physical risk, and including herself at great risk of physical injury. She was putting that little boy in danger, and other people driving that night. She was driving. .183 and .188.

7

As below, in its argument on appeal, the State conflates the culpability, conduct, and victim elements of reckless endangerment. The State suggests that because Rich operated a vehicle while legally intoxicated in violation of the DUI statute, her conduct also satisfies the elements of reckless endangerment. The State also points to the following pieces of "additional evidence" that would support a finding that Rich's conduct created a substantial risk of death or serious physical injury: (1) Rich endangered a passenger and motorists on a "major public roadway," (2) she was heavily intoxicated, and (3) she exceeded the speed limit.[1] See Resp't's Supp. Br. at 4.

The reckless endangerment statute proscribes only endangering conduct that places another person at substantial risk. State v. Graham, 153 Wn.2d 400, 406, 103 P.3d 1238 (2005). On the one hand, the presence of a passenger in the vehicle satisfies the victim element of the crime, but is not itself the endangering conduct. On the other hand, the State's suggestion that the trier of fact could have relied on the presence of others—motorists or pedestrians—to satisfy the victim element is wholly unsupported. The State did not specifically charge Rich with endangering other drivers or pedestrians. The amended information alleged that Rich "did recklessly engage in conduct which did create a substantial risk of death and serious physical injury to another person by

---

[1] It bears mentioning that the additional facts cited by the State are largely taken into account in assessing the appropriate sentence for DUI. The DUI sentencing statute differentiates between alcohol concentration levels above and below 0.15. RCW 46.61.5055. The statute also imposes a mandatory ignition interlock requirement, additional imprisonment, and sets specific monetary fines if a person convicted of DUI has a passenger under the age of 16 years old in the vehicle. RCW 46.61.5055(6). And the presence of any passenger is a factor the court is authorized to consider in formulating an appropriate DUI sentence. RCW 46.61.5055(7).

driving in a manner likely to endanger a passenger or another." However, the State offered no evidence whatsoever about the presence of other vehicles, motorists, or pedestrians, nor any evidence about the type of road or traffic conditions.

As for the State's reliance on evidence of Rich's intoxication to establish both her culpable mens rea and endangering conduct, the State exaggerates and, to a certain extent, misrepresents the evidence. The police officers who interacted with Rich when she was arrested testified that she exhibited signs of intoxication. Deputy Mulligan and Officer Copeland believed Rich was intoxicated because of her abnormally loud voice and speech patterns, the appearance of her eyes, the odor of alcohol, and her demeanor. The officers also observed that Rich had some difficulty walking unassisted, but were unsure to what extent that was due to her apparent leg injury and brace. Trooper Jon Liefson said that Rich's coordination was "poor" because she had a "hard time" gathering pieces of paper he asked for and described her intoxication as "obvious," rather than "extreme." But contrary to the State's characterization, none of these witnesses described severe incapacitation or incoherence.

The State further insists that the toxicologist testified about the manner in which Rich's specific alcohol concentration level would have affected her coordination, response time, and other abilities relevant to driving. This is inaccurate. The toxicologist described alcohol generally as a "central nervous system depressant." He also said that a person under the influence "may . . . exhibit coordination problems, where they may have difficulty maintaining their

balance standing upright completely. They may have problems grabbing for an object, such as a driver's license, seatbelt, for instance." He testified that "different individuals will be affected in different degrees." When asked about the level of alcohol that will affect a person, the toxicologist answered in general terms, not with regard to Rich's particular situation or blood alcohol level.

> [A]ny alcohol in the system has a potential to affect the individual. As far as their ability to operate a motor vehicle safely, an individual, once they reach 0.08, has [a] sufficient amount of alcohol to be unable to operate a motor vehicle in a safe manner.

Insofar as the State maintains that a jury could have inferred a substantial risk of death or injury from the evidence about Rich's driving, only Deputy Mulligan observed Rich drive. He did not indicate that Rich's manner of driving posed any danger or caused him to suspect that Rich was impaired. And even if the jury could infer from Deputy Mulligan's testimony that Rich exceeded the posted limit by some amount less than 15 miles per hour, the deputy followed Rich because he believed the car was stolen, not because of speeding or for any reason related to the manner in which the Acura was being operated. This evidence would not, therefore, allow a trier of fact to conclude that Rich's speed created a substantial risk of death or serious physical injury.

Rich analogizes to cases interpreting crimes under the motor vehicle code, Title 46 RCW. These cases establish that evidence of the intoxicated condition of a driver is insufficient to prove reckless or negligent driving. See State v. Amurri, 51 Wn. App. 262, 265, 753 P.2d 540 (1988) ("Driving an automobile under the influence of intoxicants does not, in and of itself, constitute reckless driving."); City of Bellevue v. Redlack, 40 Wn. App. 689, 694, 700 P.2d

10

363 (1985) (while proof of intoxication is required to establish DUI, "such proof alone does not warrant a conviction for negligent driving"). These cases interpreting different statutory elements inform, but do not control, our construction of the reckless endangerment statute.

Nevertheless, Rich's argument raises two important points. First, "[t]o sustain a charge of reckless endangerment, there must be proof of the creation of a substantial risk of death or serious physical injury to another person" and the risk must be an actual one. State v. O'Neal, 23 Wn. App. 899, 903, 600 P.2d 570 (1979). Thus, in O'Neal, the court observed that conduct which might be sufficient to establish assault, for instance, discharging a weapon while intending to kill or injure but mistakenly believing the weapon was loaded, would not be sufficient to establish reckless endangerment. 23 Wn. App. at 903. Here, this means that the State had to prove that the risk created by Rich's conduct was not merely hypothetical or conjectural.

Second, there is no "per se" liability for reckless endangerment based on proof of violation of the DUI statute. The analysis of a Pennsylvania appellate court interpreting a statute similar to Washington's illustrates this point. In that case, Commonwealth v. Mastromatteo, 719 A.2d 1081 (Pa. Super. 1998), police officers conducted a traffic stop and discovered an intoxicated driver and a young passenger. After a bench trial, the court convicted the driver of reckless endangerment and DUI. On appeal, the driver challenged the sufficiency of the evidence supporting her reckless endangerment conviction.

11

The court rejected the State's argument that reckless endangerment liability could rest solely upon evidence of the driver's intoxication. Mastromatteo, 719 A.2d at 1082. A reckless endangerment conviction under Pennsylvania law requires proof that the defendant's conduct caused a "substantial risk" of death or serious bodily injury and the trier of fact could not infer a risk of the degree legally necessary to support a conviction based on the driver's legal intoxication alone. Mastromatteo, 719 A.2d at 1083-84. The commonly-known fact that intoxicated drivers are, as a whole, at a greater risk than sober ones, was insufficient to establish that the risk was a substantial one. Mastromatteo, 719 A.2d at 1084. The court noted its obligation to ensure that criminal offenses are not interpreted to encompass acts beyond the scope intended by the legislature:

> [N]either do we favor attempts of zealous prosecutors and the judiciary to expand criminal definitions to encompass criminal conduct which the offense was not designed for, nor the supplanting of the democratic process that such a practice involves. If the penalties for DUI are thought of as too lenient then the legislature can increase them. If there should be additional offenses tied to DUI, say DUI with a passenger, then they likewise can be implemented by the legislature through the democratic process. However, we are unwilling to impose such value judgments upon the citizens of the Commonwealth by shoehorning conduct into the somewhat broad definitions of certain criminal offenses.

Mastromatteo, 719 A.2d at 1084.

The authority to define the elements of a crime "rests firmly with the legislature." State v. Torres Ramos, 149 Wn. App. 266, 271, 202 P.3d 383 (2009); accord State v. Evans, 154 Wn.2d 438, 447 n.2, 114 P.3d 627 (2005). The legislature may establish "per se" criminal liability for specific conduct. For

example, our DUI law includes an "illegal per se" provision. State v. Franco, 96 Wn.2d 816, 820, 639 P.2d 1320 (1982). One alternative method of committing the crime is to have an alcohol concentration level of 0.08 or higher within two hours of driving. RCW 46.61.502(1)(a). Rather than creating a presumption of impairment, the "per se" prong of the DUI statute defines the crime in these specific terms. Franco, 96 Wn.2d at 821. However, the legislature has not established per se liability for any specific conduct in enacting the reckless endangerment statue. Instead, the statute proscribes conduct which creates a "substantial risk of death or serious physical injury."

Familiar interpretive principles guide our construction of this statutory language. When interpreting a statute, our primary objective is to ascertain and give effect to the intent of the legislature. State v. Kintz, 169 Wn.2d 537, 547, 238 P.3d 470 (2010); State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). If a "statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). While we may examine "'the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole,'" we "'must not add words where the legislature has chosen not to include them,'" and "must 'construe statutes such that all of the language is given effect.'" Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007

(2009); Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598

(2003)).

The key to the analysis is the term "substantial," used in numerous statutes, but not defined by statute.[2] While the meaning of "substantial" is not limited to a particular dictionary definition, our Supreme Court has approved of this definition: "'considerable in amount, value, or worth.'" State v. McKague, 172 Wn.2d 802, 806, 262 P.3d 1225 (2011) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (2002)). McKague involved the sufficiency of the evidence to support a conviction of assault by inflicting substantial bodily injury. Therein, the court rejected another portion of the dictionary definition defining substantial as "'something having substance or actual existence.'" McKague, 172 Wn.2d at 805. The court observed that under the latter definition, "substantial" would be the practical equivalent of "any" and such a definition would render the term meaningless. McKague, 172 Wn.2d at 806. Instead, the court held that "substantial" "signifies a degree of harm that is considerable and necessarily requires a showing greater than an injury merely having some existence." McKague, 172 Wn.2d at 806.

The State did not present evidence from which the trier of fact could infer that Rich's driving created a risk of death or serious physical injury that was considerable or substantial. No witness testified that Rich's driving specifically

---

[2] Conversely, "physical injury" is defined by statute as "physical pain or injury, illness, or an impairment of physical condition." RCW 9A.04.110(4)(a).
    In State v. Pappas, 176 Wn.2d 188, 194 n.2, 289 P.3d 634 (2012), the court noted that the phrase "serious bodily injury" is most likely equivalent to "great bodily harm" under the current code. "Great bodily harm," in turn, means "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c).

posed any risk or discussed generally the risk of accident, death, or injury. The toxicologist was not asked about, and did not explain, the effects of Rich's specific level of intoxication. The evidence that Rich was under the influence of alcohol was not sufficient to allow the jury to conclude that her driving created the level of risk necessary to support a reckless endangerment conviction. Merely asking the jury to presume a fact necessary for conviction does not satisfy the requirements of the proof beyond a reasonable doubt guarantee of the Fourteenth Amendment's due process clause.[3] The State did not meet its obligation to prove the elements of reckless endangerment beyond a reasonable doubt. Accordingly, we reverse the reckless endangerment conviction and remand with instructions that it be vacated.

III

Rich raises further assignments of error. First, she contends that the prosecutor mischaracterized her testimony and engaged in misconduct by arguing that, in order to acquit, the jury had to conclude that the witnesses called by the State were lying.

After discussing the elements of each crime in closing argument, the prosecutor stated:

> Now, the defendant can testify. And she told a totally different story. She said that the car owner—and all of the officers testified, Deputy Mulligan, Deputy Copeland—they just made it all up, everything they said was a fabrication, and only she is telling you the truth.

---

[3] Indeed, contrary to the trial court's instruction to the jury that, "Your verdict on one count should not control your verdict on any other count," Instruction 11, the State urged the jury to do just that.

The prosecutor went on to argue that Rich's story was inconsistent with the evidence and that she was not a credible witness.

> I think when you examine the defendant's testimony, you will not find it credible. She gave a preposterous story. You heard the defendant. You have to believe that all the other witnesses came in here and lied. They don't have anything to gain. And hold this defendant accountable for the actions she chose to take.

It is improper for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken. State v. Fleming, 83 Wn. App 209, 213, 921 P.2d 1076 (1996). This type of argument misrepresents the role of the jury and the burden of proof by telling jurors they must decide who is telling the truth and who is lying before deciding if the State has met its burden of proof. Fleming, 83 Wn. App. at 213; State v. Wright, 76 Wn. App. 811, 825-26, 888 P.2d 1214 (1995).

Contrary to the State's contention on appeal, whether the State's argument at trial was that the jury must conclude that the State's witnesses lied in order to *believe* the defendant, or in order to *acquit* her, either way, the argument was improper. Cf. Wright, 76 Wn. App. at 826 (misconduct to argue that in order to believe or acquit the defendant, jury must find the State's witnesses lied). Here, the prosecutor did more than merely point out the obvious inconsistency between Rich's testimony and certain aspects of Detective Mulligan's and Metafaria's testimony. Cf. Wright, 76 Wn. App. at 825 (nothing misleading or unfair in stating the obvious: that if the jury accepts one version of the facts, it must necessarily reject a diametrically opposed version). It was beyond the scope of a credibility argument to assert that in order to hold Rich

"accountable," the jurors "would have to believe that all the other witnesses came in here and lied." This improper argument was exacerbated by the prosecutor's previous mischaracterization of Rich's testimony and incorrect assertion that Rich herself testified that the other witnesses lied and that only she was telling the truth.

Nevertheless, improper argument does not constitute reversible misconduct unless there is a substantial likelihood that the argument affected the jury's verdict and the prejudicial effect of the comments could not have been neutralized by an objection and curative instruction. State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012) (error waived unless prosecutor's misconduct was flagrant and ill-intentioned such that an instruction could not have cured resulting prejudice); State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011) (to establish prejudice, defendant must demonstrate a substantial likelihood that the misconduct affected the verdict). The jury instructions in this case properly stated the burden of proof, informed the jurors that the law was contained in the court's instructions, and instructed the jury to disregard any comments by the lawyers that were unsupported by the evidence or the law. The jury is presumed to follow the court's instructions and it appears that the jury did so in this case. See State v. Weber, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983). Given that the jury convicted Rich of DUI and reckless endangerment, the jurors plainly credited the testimony of Deputy Mulligan over Rich's assertion that she did not drive the Acura. But despite believing the version of the incident presented by the State's witness, it is evident that the jury still held the State to

17

its burden of proof when it acquitted Rich of possession of a stolen vehicle. Therefore, although the challenged argument was improper and objectionable, Rich was not prejudiced in any manner that could not have been neutralized by an appropriate curative instruction.

IV

Finally, Rich challenges the trial court's ruling allowing the State to make a missing witness argument in closing.

In her testimony about how she came to be arrested in the Acura, Rich mentioned various siblings. For instance, Rich said her brothers were on their way to the car to help with her wheelchair when she was arrested. Rich also mentioned "a video camera of everything that was going on," although she did not say who had the camera or describe what the alleged film depicted.

Based on this testimony, the State asked the court to give a "missing witness" instruction to the jury.[4] The court declined to do so based upon its determination that the alleged missing witnesses were not peculiarly available to the defense. See State v. Blair, 117 Wn.2d 479, 490-91, 816 P.2d 718 (1991).

---

[4] See generally, 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.20, at 177 (3d ed. 2008) (WPIC). The missing witness pattern jury instruction provides, in relevant part:

> If a person who could have been a witness at the trial is not called to testify, you may be able to infer that the person's testimony would have been unfavorable to a party in the case. You may draw this inference only if you find that:
> (1) The witness is within the control of, or peculiarly available to, that party;
> (2) The issue on which the person could have testified is an issue of fundamental importance, rather than one that is trivial or insignificant;
> (3) As a matter of reasonable probability, it appears naturally in the interest of that party to call the person as a witness;
> (4) There is no satisfactory explanation of why the party did not call the person as a witness; and
> (5) The inference is reasonable in light of all the circumstances.

18

The court ruled, however, that the State could nevertheless make a missing witness argument in closing. Rich did not object.

In closing, referring to Rich's siblings and the alleged video, the prosecutor remarked: "Why aren't they here?" The prosecutor then suggested that the reason was because Rich's version of the event was "not the way it happened."

Rich argues that the trial court's ruling refusing the instruction but allowing the argument was contradictory and erroneous. But even assuming trial court error, Rich's failure to object to the trial court's ruling precludes our review. See RAP 2.5(a) (arguments not raised in the trial court generally will not be considered on appeal). Moreover, Rich does not make the requisite showing of prejudice. See Emery, 174 Wn.2d at 760. First, the State did not assert that Rich bore the burden of proof. Second, the jury instructions properly defined the State's burden. And third, the State did not improperly suggest that the jury could find Rich guilty simply because she failed to present evidence or witnesses. In light of the evidence and the entire closing arguments, the brief reference to the video and absent witnesses did not likely affect the verdict.

Affirmed in part, reversed in part, and remanded.

We concur:

19